NEW YORK CENTRAL RAILROAD COMPANY *vs.* CENTRAL
NEW ENGLAND RAILWAY COMPANY.

Suffolk.   March 16, 1928.— June 14, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Constitutional Law*, Contract rights. *Interstate Commerce Commission.
Contract*, Performance and breach, Construction, Under seal, Assign-
ment, Trackage contract. *License. Carrier. Railroad. Jurisdiction.
Assignment. Evidence*, Materiality, Competency, Admissions, Ex-
trinsic affecting writing. *Damages*, In contract. *Practice, Civil*,
Exceptions, Requests, rulings and instructions, Parties, Amendment.

In determining whether a certain order by the interstate commerce com-
mission, relating to abandonment by the Central New England Rail-
way Company in 1921 of its line of railroad extending from the station
of Feeding Hills in the town of Agawam to a point where said line con-
nected with the Boston and Albany Railroad, permitted the Central
New England Railway Company to abandon an obligation under a
contract under seal made in 1899 between it and the Boston and Albany
Railroad Company whereby it had agreed to pay that corporation
$15,000 per year until 1940 for the use of a portion of the Boston and
Albany Railroad between Agawam Junction and Springfield, this court
*assumed* that Congress, in enacting § 402 of the transportation act of
February 28, 1920, 41 U. S. Sts. at Large, 456, 476, 477, 478, adding
paragraphs 18-20 to the interstate commerce act, § 1, authorized the
commission to sanction the abandonment by an interstate carrier, with-
out incurring a liability, of such a contractual obligation.

In order that the order of the interstate commerce commission should have
the effect of permitting the Central New England Railway Company
to abandon such contract with impunity, an intent that such should
be the effect must appear in the order by express words or by plain im-
plication from its language.

Upon an examination by this court of the report by the interstate com-
merce commission upon the application filed by the Central New Eng-
land Railway Company in June, 1921, "for a certificate that the present
and future public convenience and necessity permit the abandonment
of a line of the applicant's railroad extending from the station of Feeding
Hills in the town of Agawam to a point where said line connects with the
Boston & Albany Railroad," and of the commission's certificate issued
in September, 1921, it was *held*, that it did not appear by express words
or clear implication that the commission intended to deprive the Boston
and Albany Railroad Company, or its successor, of its rights under the
agreement with the Central New England Railway Company.

The end sought by the commission in issuing the certificate was the wiping
out of the operating loss and it did not involve the removal of the fixed
charge for rental to be paid under the contract.

In an action against the Central New England Railway Company upon a contract under seal made with it by the Boston and Albany Railroad Company in 1899 whereby it agreed to pay $15,000 per year to 1940 in return for the promise of the Boston and Albany Railroad Company to "license and permit . . . [it] to pass with trains . . . over the line of the" Boston and Albany Railroad, the defendant relied in defence upon an order by the interstate commerce commission authorizing an abandonment of the line. Having held that the order of the interstate commerce commission did not authorize an abandonment of obligation under the contract above described without liability, this court, upon an examination of the contract, further *held,* that

(1) The action was not brought to enjoin, set aside, annul, or suspend in whole or in part the order of the interstate commerce commission, and the court had jurisdiction in this action to construe the order;

(2) The contract was free from ambiguity; the annual payment was for the right to use and not for the use of the tracks and was to be made irrespective of use;

(3) Even if it be assumed that the agreement was in the nature of a license rather than an easement in gross or a trackage contract for a stated period, and had the usual characteristic of a license, revocability, it did not follow that the license could be revoked by either party with impunity;

(4) The Central New England Railway Company under the terms of the agreement could be held liable for breach of the contract.

The lease by the Boston and Albany Railroad Company to the New York Central Railroad Company did not revoke the license given by the contract above described.

Under the provisions of the contract above described, the duties of the Boston and Albany Railroad Company could be delegated, and, the Central New England Railway Company having paid a sum of money annually over a period of nineteen years to the New York Central Railroad Company or to its predecessor, the New York Central and Hudson River Railroad Company, it could not in this action object to the assignment by the Boston and Albany Railroad Company to the New York Central Railroad Company.

A third person cannot maintain an action on a sealed instrument to which he is not a party.

The action upon the sealed instrument above described was brought by the New York Central Railroad Company in its own name, and an exception to a ruling by the trial judge, that as a matter of law the plaintiff as lessee or assignee of the lessee of the Boston and Albany Railroad Company had a right to bring this action, was sustained, but leave was given to the plaintiff to amend its writ by substituting the words "The Boston & Albany Railroad Company, Assignor, for the benefit of The New York Central Railroad Company, Assignee," in place of the words "The New York Central Railroad Company" as plaintiff therein.

The contract which was the basis of the action above described being unambiguous, it was proper to exclude evidence of circumstances surrounding the execution of the contract which, the defendant contended, would prove that it was not under a liability to pay irrespective of use.

Evidence was inadmissible at the trial of the action above described to show that, to the knowledge of all parties at the time of the execution of the contract, through traffic from a southwesterly direction over the defendant's branch line to Springfield, Massachusetts, was essential to the operation of the branch line at a profit by the defendant; and that the Boston and Albany Railroad Company, by its lease to the plaintiff, had diverted such through traffic from the defendant's line and deprived the defendant of it.

Such evidence was not rendered admissible by the principle that performance of a bilateral contract by one of the two parties to it is excused if such performance is prevented by the other party; the offer of such evidence was an attempt to read into and add to the unambiguous contract stipulations on the part of the Boston and Albany Railroad Company not to compete with the plaintiff and to undertake to divert traffic to the defendant's lines.

The certificate of the interstate commerce commission was not admissible at the trial of the action above described upon the question of repudiation of the contract because it did not justify the repudiation.

Letters passing between the parties to the action above described which were admitted solely upon the question, whether the defendant abandoned the contract that it had with the plaintiff, and for no other purpose, were *held* properly to have been admitted, even if it be assumed that the letters were written for settlement purposes, under the rule of evidence that evidence of an admission by a party of a fact which is not itself being discussed by the parties in connection with the proposed settlement is competent although made in the course of the settlement proceedings.

One of the letters above described bore the specific legend, "without prejudice," and in substance merely set forth the defendant's contention as to interpretation of the contract on the question of use practically as asserted by its counsel at the trial, and it was *held* that, in the circumstances disclosed by the records, the defendant was not harmed by the admission of the letter in evidence.

To establish, in the action above described, gain to the plaintiff from the cessation of certain operating expenses laid upon the plaintiff by the provisions of the contract, the defendant, to show the average cost of such operation per mile, offered evidence of such cost over the plaintiff's entire system and its entire mileage. It appeared that there was lack of uniformity of such costs in various sections of the plaintiff's system. The evidence was excluded. *Held*, that the evidence properly was excluded.

The contract which was the basis of the action above described provided for payment to the Boston and Albany Railroad Company, beyond the annual rental for which the action was brought, of certain additional compensation relating to switching movements, as to which no recovery was sought. The judge charged the jury that, in considering any offsets to the claim for rental, they should exclude from their consideration any testimony in respect to delays in the Springfield yard due to switching Central New England freight cars and making up or breaking up Central New England trains. The defendant excepted. *Held*, that

(1) If the words, "the breaking up Central New England trains," were read in their context, it was apparent that the judge was referring to movements of trains for which the Boston and Albany Railroad Company was entitled to specific compensation;

(2) The exception must be overruled.

Ownership in fee of the right of way over which ran the railroad tracks which were the subject matter of the contract above described was not an essential prerequisite to the right of the Boston and Albany Railroad Company to make the contract: a statutory taking for general railroad purposes was sufficient.

A paragraph of the contract above described provided that the Boston and Albany Railroad Company should, among other things, "take care of passenger trains in its passenger yard." The judge left to the jury the question, whether those words meant simply that the Boston and Albany Railroad Company was to place the cars as they were needed by the Central New England Railway Company, or whether it included an undertaking to sweep out the cars and wash the car windows, and, subject to exception by the defendant, instructed the jury in this connection that the manner in which the parties by their conduct interpreted this clause was to be taken into consideration. *Held,* that

(1) Testimony of the vice-president of the Boston and Albany Railroad Company respecting the meaning of the provision in question was not binding on the plaintiff;

(2) The defendant's exception to the instruction given to the jury must be overruled.

CONTRACT, by "The New York Central Railroad Company . . . lessee of the Boston & Albany Railroad," upon a contract under seal made between the defendant and the Boston and Albany Railroad Company and described in the opinion. Writ dated April 5, 1922.

The contract in question was as follows:

THIS AGREEMENT made this 25th day of October 1899, between The Boston & Albany Railroad Company, hereinafter called the Albany Company, of the first part, and the Central New England Railway Company, hereinafter called the New England Company, of the second part, WITNESSETH: —

Whereas the New England Company, in pursuance of the agreement between the parties hereto and others dated the ninth day of May, 1898, is now constructing and will shortly complete the branch railroad from Tariffville, Connecticut, to a point at or near West Springfield, Massachusetts, to connect with the lines of the Albany Company: Now therefore, it is agreed as follows: —

FIRST: The Albany Company from and after the opening of the branch line for the passage of regular trains until the thirtieth day of August in the year nineteen hundred and forty, shall license and permit, subject to the regulation and control of the Albany Company as to the movement and government of trains, the said Central New England Railway Company, and its successors to pass with trains and locomotives over the line of the Albany Company between the point of connection west of the Connecticut River and the yard and engine houses at West Springfield in each direction, and further for passenger trains across the bridge over the Connecticut River and into the Union Station at Springfield, with the right to use in connection with such trains all present and future water stations and other facilities necessary for the accommodation of such trains and the traffic to be transported by them, the said New England Company paying to the Albany Company therefor, Fifteen Thousand Dollars ($15,000.00) per annum in equal Quarterly payments on the first days of January, April, July and October of each year, the first payment to be made upon the first quarterly period next succeeding the opening of the said branch line for the passage of regular trains.

If the daily average number of trains shall exceed three freight trains of not more than thirty cars in each train in each direction, and three passenger trains in each direction the price to be paid shall be increased in the proportion in which the increased number of trains exceeds the number of trains aforesaid and this computation shall be made once in six months during the term of this contract and payment shall thereupon be made accordingly. If said New England Company shall take water from any of the water stations of the Albany Company it shall share in the expense of maintaining such stations in proportion to the consumption of water by each of the parties thereto, including therein the price paid by the Albany Company for water. If the New England Company shall use the stalls in the engine house of the Albany Company it shall pay One Dollar ($1.00) per day for each stall so used. The said

New England Company shall be permitted to erect a coal platform or trestle for the loading of its supply coal at some convenient point to be mutually agreed upon.

SECOND. The Albany Company shall transfer or switch loaded freight cars brought by the New England Company to the West Springfield yard to a connection with the Boston and Maine Railroad Company's lines or the New York, New Haven and Hartford Railroad Company's lines in Springfield in either direction for the rate or sum of Two Dollars (2.00) per car without regard to destination or contents of such car, and shall move such freight so brought by the New England Company designed for points in Springfield in carload lots, excepting coal for the rate or sum of thirty cents (30c) per ton of two thousand (2000) pounds; the rate or sum for so moving coal shall be fifty cents (50) per ton of twenty-two hundred and forty (2240) pounds.

The foregoing rates include the return of empty cars and the hauling of empty cars furnished by the New England Company to be loaded on the lines of any other company and then returned. For such freight as is required to pass through the freight house of the Albany Company the rate or sum to be charged shall be fifty (50) cents per ton of two thousand (2000) pounds, and in addition thereto a charge for the labor of handling, based upon the proportion which the business of the New England Company bears to the total amount of the business passing through such freight house, to be computed monthly, and only to include the expense of labor in such freight house.

THIRD. The Albany Company for passenger business shall sell tickets, handle baggage, and take care of passenger trains in its passenger yard and transfer through passenger cars to connecting lines.

FOURTH. The New England Company shall build and maintain an interlocking tower and its connections at the point of junction of its road with the road of the Albany Company.

The necessary men for the operation of said tower shall be appointed and paid by the Albany Company and pri-

marily deemed to be the servants of the Albany Company. Their compensation, however, shall be reimbursed to the Albany Company, by the New England Company, quarterly.

FIFTH.   The employees of the Albany Company while operating any signal or throwing any switch or performing any duty in connection with the operation of the rolling stock, shall be considered to be the servants of that one of said parties the moving of whose rolling stock called for such operation or performance, and in case of any accident arising from the acts, omissions or neglects of said employees, if such operation or performance is occasioned by the moving of the rolling stock of both parties, if it can be ascertained by whose rolling stock the injury is actually done, that party shall be responsible, but if that cannot be ascertained, then the responsibility for that accident shall be borne by both parties equally.   Each party shall be liable for any damage done through failure or defect of its equipment.   The Albany Company shall be liable for any damage done through the failure or defect of its roadway, but in case of any interruption of business by any accident or disaster, the New England Company or its successors or transferee shall have only the same temporary opportunities for the use of the tracks of the Albany Company proportioned to its business as the Albany Company then has and enjoys for its own traffic.   All responsibility for baggage brought to said Union Station by either Company and destined to a station on the road of the other Company shall be upon the forwarding Company after such baggage is unloaded at said Union Station, and all responsibility for baggage delivered at said station to be forwarded by the New England Company shall be upon the said New England Company from the time of its delivery, and all responsibility for baggage received at said station from said New England Company for delivery in Springfield shall be upon the New England Company from the time of such receipt until the same is delivered.

SIXTH.   The said Central New England Railway Company and its successors shall make the payments required by this contract in accordance with the terms thereof.

SEVENTH. No transfer of this contract or the rights under it, in whole or in part, shall be made by the said New England Company or its successors without the consent in writing of the Albany Company, and this contract is made upon this condition, that in case of a breach of any of the stipulations to be observed on the part of the New England Company or of those claiming under it, and a continuance of such breach for thirty days or in case the rights under this contract shall be taken from said New England Company or its successors or transferee by process of law, by proceedings in bankruptcy or insolvency or for a receivership or otherwise, the Albany Company or its successor may, while the default or neglect continues, or at any time after such taking by process of law, and notwithstanding any license or waiver of any prior breach of condition, without any notice or demand terminate this contract and all rights acquired thereunder by the said New England Company or any person claiming by, through, or under it.

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective corporate seals, duly attested, the day and year first aforesaid.

[seal] THE BOSTON AND ALBANY RAILROAD COMPANY
　　　　　By Edward D. Hayden
　　　　　　　　Vice President
ATTEST:
　　E. D. Hayden, Secretary & Clerk.
[seal] CENTRAL NEW ENGLAND RAILWAY COMPANY,
　　　　　By John W. Brock,
　　　　　　　　President
ATTEST:
　　Clyde A. Hillne.

In the Superior Court, the action was tried before *Callahan*, J. The letter dated January 3, 1922, referred to in the opinion, was from C. L. Bardo, president of the Central New England Railway Company to H. M. Briscoe, vice-president of the Boston and Albany Railroad Company, and its text read as follows:

"Referring to your letters of December 14th and 29th, relative to contract covering use of tracks between Agawam Jct. and Springfield.

"As we look at the matter the contract has been terminated by virtue of our notice to your Company effective December 15th, and therefore we feel that we cannot consistently take up with you any question as to the terms upon which the contract 'shall be cancelled.'

"As we view the matter, the Central New England Railway Company never agreed in writing or otherwise to continue the use of the tracks of your Company to 1940 or any other definite time. It did agree, however, to pay $15,000 as an annual compensation for the use of your tracks, and this it has done.

"It seems to be clearly and forcibly implied, from the language of the agreement, that the Central New England Railway Company was required to pay a fixed rate for as long as it saw fit to use the tracks, and having discontinued the use of track upon proper notice, it does not recognize any further liability under the contract.

"This letter is, of course, without prejudice."

Other material evidence and exceptions saved by the parties are stated in the opinion. The jury found for the plaintiff in the sum of $169,012.72. Both parties alleged exceptions.

*J. L. Hall & M. Jenckes*, for the defendant.

*L. A. Mayberry*, (*G. H. Fernald, Jr., & R. Gallagher* with him,) for the plaintiff.

PIERCE, J. In this action the plaintiff seeks to recover damages because of the breach of a written contract. The plaintiff's declaration consists of one count, in the terms which follow: "The plaintiff says that the defendant on or about October 25, 1899, entered into a contract in writing with the Boston and Albany Railroad Company, a copy of which is hereto attached and marked 'A'; that said contract was to continue in effect until August 30, 1940; that under said contract the defendant was obligated to pay Fifteen Thousand Dollars ($15,000.00) per annum for the use of a portion of the Boston and Albany Railroad between Agawam

Junction and Springfield, Massachusetts; that the plaintiff succeeded to all the rights of the Boston and Albany Railroad Company in said contract as the lessee of the Boston and Albany Railroad by virtue of a lease dated November 15, 1899; that the plaintiff and its predecessor, the Boston and Albany Railroad Company, have at all times been ready and willing to perform and have offered to perform the said contract and have performed said contract, except in so far as they have been prevented from so doing by the acts of the defendant; that the defendant under date of November 9, 1921, notified the plaintiff that on December 15, 1921, it would cease to operate its trains over the Boston and Albany Railroad under said contract and would refuse to make any further payments under said contract; that the defendant thereafter refused to pay to the plaintiff the bills due under said contract or to perform said contract after said December 15, 1921; all to the great damage of the plaintiff."

The defendant's substitute answer denies each and every allegation in the plaintiff's "writ and declaration contained. And for further answer to the plaintiff's declaration the defendant says that the alleged contract attached to the plaintiff's declaration as Exhibit 'A' was signed in pursuance of a previous agreement dated May 9, 1898, between the Boston and Albany Railroad Company, the Hartford and Connecticut Western Railroad Company, and the Philadelphia, Reading and New England Railroad Company and its reorganization committee, by the terms of which the defendant, Central New England Railway Company, was to be organized to enter into said Exhibit 'A'; that, after the making of the contract alleged in the plaintiff's declaration both by the action of the plaintiff and the Boston and Albany Railroad Company; jointly and severally, and also because of other circumstances not within the possible contemplation of the parties thereto at the time of the making of said agreement, the operation of trains into Springfield over the tracks of the defendant and the Boston and Albany Railroad Company and the performance of said arrangement by the defendant was rendered illegal, impossible, and such a hardship and heavy burden on the defendant as to be unenforce-

able, confiscatory, and contrary to the Constitution of the Commonwealth of Massachusetts. And for further answer to the plaintiff's declaration the defendant says that on September 8, 1921, in accordance with paragraphs 18 and 19 of § 1 of the interstate commerce act (41 U. S. Sts. at Large, 474) a certificate of public convenience and necessity was issued to the defendant by the interstate commerce commission, a copy of which is marked 'Exhibit B' and annexed hereto and made a part of this answer; that in pursuance of and in reliance on this certificate the defendant abandoned its line of railroad extending from Feeding Hills in the Town of Agawam, county of Hampden, Massachusetts, to its connection with the Boston and Albany Railroad, and ceased the operation of trains over this line into the city of Springfield, Massachusetts, by way of the plaintiff's tracks as provided in Exhibit 'A' of the plaintiff's declaration."

After a trial and verdict for the plaintiff in the Superior Court, the case comes before this court on two substitute bills of exceptions, one of the plaintiff and the other of the defendant. The bill of exceptions for the plaintiff is addressed mainly to rulings of the presiding judge on the measure of damages and as to the burden of proof upon the issue of the amount of damages. The exceptions of the defendant relate (1) to the refusal of the presiding judge to grant its motions to dismiss the action, in substance because, as it is alleged, the Federal statutes have given to the Federal courts exclusive jurisdiction of the subject of this case; (2) to the refusal of the presiding judge to grant its motion for a directed verdict; (3) to the admissibility or rejection of testimony; and (4) to the granting of certain requested rulings of the plaintiff, and to the refusal to give certain requests for rulings made by the defendant.

The contract relied on by the plaintiff, in substance above set out, is contained in an instrument under seal, executed by the Boston and Albany Railroad Company and the defendant. The plaintiff's right to bring this action rests on two assignments, (1) that of the Boston and Albany Railroad Company to the New York Central and Hudson River Railroad Company, dated November 15, 1899, and contained in a lease of

the Boston and Albany Railroad Company to the New York
Central and Hudson River Railroad Company, which was
executed subject to the approval of the Legislature, and
approved, with certain stipulations, by St. 1900, c. 468: the
stipulations were accepted September 19, 1900; *Boston &
Albany Railroad* v. *New York Central Railroad,* 256 Mass.
600, 614; and (2) an assignment through the lease of the
New York Central and Hudson River Railroad Company
to the plaintiff, which was admitted without objection by the
defendant.  The plaintiff offered in evidence the agreement
between the Boston and Albany Railroad Company and the
defendant, dated October 25, 1899, upon which the plaintiff
bases its right to recover in this action.  The defendant did
not file any denial of the genuineness of the signatures to this
instrument, nor any notice that it would require proof of
them at the trial; G. L. c. 231, § 29; *Scholl* v. *Gilman,* 263
Mass. 295, 298; and in response to a request under G. L.
c. 231, § 69, as amended by St. 1926, c. 381, § 1, it admitted
the execution of the agreement, but not the authority of the
persons whose signatures appear thereon to bind the corpo-
ration.  The agreement was admitted in evidence subject
to the exception of the defendant upon the question of author-
ity, no other objection or exception being argued.  Under
Rule 37 of the Superior Court (1923) the defendant admitted
"that payments covering operation under the agreement of
October 25, 1899, from September 12, 1902, to December 15,
1921, were made by the Central New England Railway Com-
pany to the Boston and Albany Railroad Company (New
York Central and Hudson River Railroad Company, lessee)
until sometime in 1914 and to the Boston and Albany Rail-
road Company (New York Central Railroad Company,
lessee) from 1914 to 1921.  Said payments were for the total
amount and were all of the charges made by the Boston and
Albany Railroad Co.  (New York Central and Hudson
River Railroad Company or New York Central Railroad
Company, lessee, as the case might be) on account of opera-
tion under the agreement of October 25, 1899, from that date
until December 15, 1921.  The defendant has not operated

under the agreement of October 25, 1899, nor made payments under the same since December 15, 1921."

In June, 1921, the defendant, under § 1 of the interstate commerce act as amended by the transportation act of 1920, 41 U. S. Sts. at Large, 474, "filed an application for a certificate that the present and future public convenience and necessity permit the abandonment of a line of the applicant's railroad extending from the station of Feeding Hills in the town of Agawam to a point where said line connects with the Boston & Albany Railroad, both in Hampden county, Mass., a distance of approximately 1.87 miles." On this application the report of the commission is in part as follows: The Central New England Railway Company "owns and operates about 300 miles of track in its entire system. Its trains enter Springfield, a city of more than 100,000 inhabitants, by using 4.05 miles of track of the Boston & Albany railroad. Under the trackage agreement the applicant is to pay the Boston & Albany railroad company $15,000 a year for the right to operate over this track not more than 3 freight trains of 30 cars each and 3 passenger trains daily. This agreement expires August 30, 1940. The applicant proposes to abandon about 1.87 miles of track extending from Agawam to its connection with the Boston & Albany. The traffic is very light over this line; it is handled in one mixed train a day for the present time and it is not likely to increase in the near future. From Agawam an electric line runs directly into Springfield, hauling passengers and light freight. For the year 1920 the revenue derived from the line proposed to be abandoned was $2,686.04, and the operating expenses were $41,518.62, resulting in an operating loss of $38,832.58. Upon the facts presented we find that the present and future public convenience and necessity permit the abandonment of the line in question. A certificate to that effect will accordingly be issued."

On September 8, 1921, the commission issued a certificate of public convenience and necessity in the following form: "Investigation of the matters and things involved in this proceeding having been had, and said Division having, on the date hereof, made and filed a report containing its findings of

fact and conclusions thereon, which said report is hereby referred to and made a part hereof: *It is hereby certified,* That the present and future public convenience and necessity permit the abandonment by the Central New England Railway Company of its line of railroad extending from the station of Feeding Hills in the town of Agawam to a point where said line connects with the Boston & Albany Railroad, both in Massachusetts, as described in the application and report aforesaid; *It is ordered,* That said Central New England Railway Company be, and it is hereby, authorized to abandon said line of railroad; *It is further ordered,* That said Central New England Railway Company, when filing schedules canceling tariffs applicable to said line of railroad, shall in such schedules make specific reference to this certificate by title, date and docket number."   On November 9, 1921, the defendant sent the Boston & Albany Railroad Company a letter, which reads: "Please take notice that this Company will discontinue operation of its lines north of Feeding Hills station, and between there and Agawam Junction, effective December 15, 1921.   At said date this Company will cease to make use of the license and permission acquired by it by virtue of contract with your Company of October 25, 1899, and will discontinue payments thereunder as of said date. The above discontinuance of operation is by virtue of certificate of the Interstate Commerce Commission, Division 4, dated September 8, 1921, in the matter of application of the Central New England Railway Company for a certificate of public convenience and necessity, Finance Docket #1479. If any questions of detail arise in connection with the discontinuance, they may be taken up and settled by mutual agreement between representatives of the two Companies."

It is not disputed that the branch line in question was open and that the defendant began the operation of its trains thereover on September 15, 1902, and continued such operation with gradual decrease in the number of trains operated until December 15, 1921, when, pursuant to a written notice dated November 9, 1921, the defendant ceased the operation of trains over the tracks of the plaintiff and declined to make any further payments under the contract;

and it is also admitted that, since December 15, 1921, the defendant has never operated any trains over the tracks of the plaintiff into Springfield or West Springfield, nor has it made any payments in accordance with the terms of the agreement and has since failed to exercise its rights thereunder, pursuant to its letter of November 9, 1921. A lengthy correspondence between the plaintiff and defendant followed the letter of November 9, after which, on April 5, 1922, this action was brought to recover damages at the rate of $15,000 a year for more than eighteen years.

We shall consider the motion of the defendant to dismiss, in connection with its motion for a directed verdict. Paragraphs 18–20, inclusive, added to § 1 of the interstate commerce act by § 402 of the transportation act of February 28, 1920, 41 U. S. Sts. at Large, 456, 476, 477, 478, upon which the defendant relies to sustain its motion to dismiss for want of jurisdiction, as also in support of its motion for a directed verdict, read: "(18) After ninety days after this paragraph takes effect no carrier by railroad subject to this Act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line or railroad, or extension thereof, or shall engage in transportation under this Act over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this Act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment. (19) The application for and issuance of any such certificate shall be under such rules and regulations as to hearings and other matters as the Commission may from time to time prescribe, and the provisions of this Act shall apply to all such proceedings. Upon receipt of any application for such certificate the Commission shall cause

notice thereof to be given to and a copy filed with the governor of each State in which such additional or extended line of railroad is proposed to be constructed or operated, or all or any portion of a line of railroad, or the operation thereof, is proposed to be abandoned, with the right to be heard as hereinafter provided with respect to the hearing of complaints or the issuance of securities; and said notice shall also be published for three consecutive weeks in some newspaper of general circulation in each county in or through which said line of railroad is constructed or operates.   (20) The Commission shall have power to issue such certificate as prayed for, or to refuse to issue it, or to issue it for a portion or portions of a line of railroad, or extension thereof, described in the application, or for the partial exercise only of such right or privilege, and may attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require.   From and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate and proceed with the construction, operation, or abandonment covered thereby.   Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest; and any carrier which, or any director, officer, receiver, operating trustee, lessee, agent, or person, acting for or employed by such carrier, who knowingly authorizes, consents to, or permits any violation of the provisions of this paragraph or of paragraph (18) of this section, shall upon conviction thereof be punished by a fine of not more than $5,000 or by imprisonment for not more than three years, or both."

The matter of first importance, because it affects the jurisdiction of the court, is the contention that the certificate of public convenience and necessity issued to the defendant by the interstate commerce commission is a defence to this

action. Congress in the exercise of its power to regulate interstate commerce may unquestionably in the interests of the public at large authorize the interstate commerce commission to permit an interstate carrier to abandon an existing obligation without thereby incurring a liability. *Union Bridge Co.* v. *United States*, 204 U. S. 364, 399, 400. *Hadacheck* v. *Los Angeles*, 239 U. S. 394. *New York* v. *United States*, 257 U. S. 591, 601. *Dayton-Goose Creek Railway* v. *United States*, 263 U. S. 456, 478. *Commonwealth* v. *Alger*, 7 Cush. 53, 85, 86. *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 316, 317. *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73, 77. Compare *Railroad Commission of Texas* v. *Eastern Texas Railroad*, 264 U. S. 79, 85. The issues here are whether Congress conferred such authority on the interstate commerce commission and, if Congress did, whether the authority so conferred has been exercised. It is fundamental that the act of Congress and the order of the interstate commerce commission will not be construed to deprive the Boston and Albany Railroad Company or its successor, the New York Central Railroad Company, of its vested rights unless it appears by express words or plain implication that such was the intention of both Congress and the commission. *Sewall* v. *Jones*, 9 Pick. 412, 414. *Commonwealth* v. *Tewksbury*, 11 Met. 55, 57. *Commonwealth* v. *Hayden*, 211 Mass. 296, 297. *Regina* v. *Guardians of Mallow Union*, Ir. R. 12. C. L. 35, 41. *Metropolitan Asylum District* v. *Hill*, 6 App. Cas. 193, 208. *Western Counties Railway* v. *Windsor & Annapolis Railway*, 7 App. Cas. (N.Y.) 178, 188. See *Texas* v. *Eastern Texas Railroad*, 258 U. S. 204, 217, 218. This rule of construction, however, does not go to the extent of destroying the purpose underlying the legislation. It will be assumed that Congress, in enacting § 402 of the transportation act of February 28, 1920, 41 U. S. Sts. at Large, 456, 476, 477, 478, adding paragraphs 18–20 to the interstate commerce, § 1, authorized the commission to sanction the abandonment by an interstate carrier of a contractual obligation, such as existed between the parties in the case at bar, with impunity. Chief Justice Taft, in *Dayton-Goose Creek Railway* v. *United States, supra,* said that the trans-

portation act " . . . seeks affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country.   It aims to give the owners of the railways an opportunity to earn enough to maintain their properties and equipment in such a state of efficiency that they can carry well this burden.   To achieve this great purpose, it puts the railroad systems of the country more completely than ever under the fostering guardianship and control of the Commission, which is to supervise their issue of securities, their car supply and distribution, their joint use of terminals, their construction of new lines, their abandonment of old lines, and by a proper division of joint rates, and by fixing adequate rates for interstate commerce, and in case of discrimination, for intrastate commerce, to secure a fair return upon the properties of the carriers engaged. . . . To regulate in the sense intended is to foster, protect and control the commerce with appropriate regard to the welfare of those who are immediately concerned, as well as the public at large, and to promote its growth and insure its safety."   Mr. Justice Brandeis, in *Colorado* v. *United States*, 271 U. S. 153, 162, 163, said: "The certificate issues, not primarily to protect the railroad, but to protect interstate commerce from undue burdens or discrimination.   The Commission by its order removes an obstruction which would otherwise prevent the railroad from performing its federal duty.   Prejudice to interstate commerce may be effected in many ways.   One way is by excessive expenditures from the common fund in the local interest, thereby lessening the ability of the carrier properly to serve interstate commerce.   Expenditures in the local interest may be so large as to compel the carrier to raise reasonable interstate rates, or to abstain from making an appropriate reduction of such rates, or to curtail interstate service, or to forego facilities needed in interstate commerce. Likewise, excessive local expenditures may so weaken the financial condition of the carrier as to raise the cost of securing capital required for providing transportation ·facilities used in the service, and thus compel an increase of rates. Such depletion of the common resources in the local interest may conceivably be effected by continued operation of an

intrastate branch in intrastate commerce at a large loss. The sole objective of paragraphs 18–20 is the regulation of interstate commerce. Control is exerted over intrastate commerce only because such control is a necessary incident of freeing interstate commerce from the unreasonable burdens, obstruction or unjust discrimination which are found to result from operating a branch at a large loss." See in this connection the Congressional Record of the 66th Congress, 2d Session, on pages 131, 825, 862 and 863.

The question remains whether the interstate commerce commission has exercised the authority which, it has been assumed, Congress has conferred on it. The solution rests in a construction of the report and certificate of the commission. We are of opinion the certificate of the interstate commerce commission is not a defence to this action for the reason that it does not appear by express words or clear implication that the commission intended to deprive the Boston and Albany Railroad Company, or its successor, of its rights under the agreement with the Central New England Railway Company. This view of the intention of the interstate commerce commission finds support in the admitted fact that the application of the defendant was submitted to the commission "without formal hearing," and without the plaintiff being made a party to the proceedings. It is supported by the further fact that it is not to be supposed by implication that the interstate commerce commission intended to adjudicate without a hearing that the $15,000 annual payment was included in the operating charges of the defendant railroad.

The defendant sustained an operating loss on the sections of the lines now abandoned, for the year 1920, of $38,832.58, which the commission, apparently, desired to wipe out. The operating loss was ascertained by deducting the revenue, $2,686.04, from the operating expenses, $41,518.62. The annual rental for this section of the lines could have been found to be a fixed charge and not an operating expense. *Schmidt* v. *Louisville, C. & L. Railway*, 119 Ky. 287, 301, 305. In *Reagan* v. *Farmers' Loan & Trust Co.* 154 U. S. 362, in the financial statement on page 406 the rental for use of a bridge

is not included in operating expenses. Compare *Adams* v. *Eastern Massachusetts Street Railway,* 257 Mass. 115, 132; *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388, 399; *Nampa & Meridian Irr. Dist.* v. *Bond,* 288 Fed. Rep. 541, 543; *Fleischer* v. *Pelton Steel Co.* 183 Wis. 451, 458, 459.

The end sought by the commission in issuing the certificate, the wiping out of the operating loss, does not involve the removal of the fixed charge for rental. In addition both parties to the agreement are interstate carriers. It is natural to assume that if the commission had intended to take away an asset from one carrier for the purpose of relieving another carrier of liability, it would have required further facts and dealt with this question specifically. See in this connection *Control of Hereford Railway,* 99 I. C. C. 7.

The defendant contends that its motion to dismiss for want of jurisdiction should have been allowed. This case, however, is not brought to enjoin, set aside, annul, or suspend in whole or in part the order of the interstate commerce commission in view of the construction of this order adopted. The contention that the court did not have jurisdiction to construe the order is groundless. *Great Northern Railway* v. *Merchants Elevator Co.* 259 U. S. 285, and cases collected in note, page 295, and references therein to *Cheney* v. *Boston & Maine Railroad,* 227 Mass. 336, as *contra.*

Under the terms of the contract the defendant agreed to pay $15,000 per annum in return for the promise of the plaintiff's lessor to "license and permit . . . [it] to pass with trains . . . over the line of the [plaintiff's lessor]." The agreement is free from ambiguity and indicates beyond a doubt that the annual payment was to be made irrespective of use. It was consideration paid for the right to use and not for the use, and as so construed it does not involve a forfeiture. If it be assumed that the agreement is in the nature of a license rather than an easement in gross, *Goldman* v. *Beach Front Realty Co.* 54 Vroom, 97, 99, 100, or a trackage contract for a stated period, *Union Pacific Railway* v. *Chicago, Rock Island & Pacific Railway,* 163 U. S. 564, and has the usual characteristic of a license, namely, revocability, it does not

follow that the license can be revoked by either party with impunity.

We think the Central New England Railway Company under the terms of the agreement can be held liable for breach of contract.  Williston, Contracts, § 493.  *McCrea* v. *Marsh*, 12 Gray, 211.  *King* v. *David Allen & Sons, Billposting, Ltd.* [1916] 2 A. C. 54.  *Kerrison* v. *Smith*, [1897] 2 Q. B. 445. *United Merchants' Realty & Improvement Co.* v. *American Billposting Co.* 128 N. Y. Supp. 666, 667.  The promise of the Boston and Albany Railroad Company was not, therefore, purely illusory.  The case of *Whittemore* v. *New York, New Haven & Hartford Railroad*, 191 Mass. 392, is clearly distinguishable; there the term of the agreement, "that whenever said first party may find it necessary for the accommodation of its business to remove said spur track," no claim for damages shall be made, was the decisive factor.  The lease by the Boston and Albany Railroad Company to the New York Central Railroad Company did not revoke the license.  Under the terms of the lease of the defendant and the Boston and Albany Railroad Company the former assumed all the obligations of the latter.  It is clear, therefore, that the Boston and Albany Railroad Company did not intend to revoke the license by the assignment.  It is not open to serious doubt that under the terms of the agreement between the Boston and Albany Railroad Company and the Central New England Railway Company, the duties of the former could be delegated.  The seventh paragraph of the agreement provides in part that "in case of a breach of any of the stipulations to be observed on the part of the New England Company or of those claiming under it, and a continuance of such breach for thirty (30) days, or in case the rights under this contract shall be taken from said New England Company or its successor or transferee . . . the Albany Company or its successors may, while the default or neglect continues, . . . without any notice or demand, terminate this contract . . . ."  See in this connection Williston, Contracts, § 423.  The defendant admittedly paid a sum of money annually over a period of nineteen years to the plaintiff or to its predecessor, the New York Central and

Hudson River Railroad Company. See *Boston & Albany Railroad* v. *New York Central Railroad,* 256 Mass. 600, 609. Such action on its part prevents it from now objecting to the assignment. *Nelson Theatre Co.* v. *Nelson,* 216 Mass. 30, 34. *Saxeney* v. *Panis,* 239 Mass. 207, 210.

The exceptions taken to the refusal to grant the motion to dismiss and to direct a verdict for the defendant, in so far as they are based upon its requests numbered two, and nineteen, which read: (2) "The duties imposed upon the Boston and Albany Railroad Company by the agreement sued on were such as could not be delegated to the New York Central Railroad Company so that the defendant is relieved from liability on its undertakings"; (19) "The lease of the Boston and Albany Railroad Company to the New York Central and Hudson River Railroad Company dated November 15, 1899, effective July 1, 1900, is a revocation and termination of the license and privileges granted by the agreement of October 25, 1899"; and to the granting of the request of the plaintiff numbered ten, which reads: "As matter of law, the execution of the agreement and supplemental agreement of November 15, 1899, leasing to the New York Central and Hudson River Railroad Company for a period of ninety-nine (99) years from July 1, 1900, the railroad system and equipment of the Boston and Albany Railroad Company does not constitute a defence to this action": must be overruled. In so far as these exceptions are based upon the defendant's request numbered four which reads: "There is no evidence in this case that would warrant the jury in finding that the defendant is bound by any obligation existing under any agreement between it and the New York Central Railroad Company"; and to the granting of request of the plaintiff numbered seventeen, which reads: "As matter of law, the plaintiff as lessee or assignee of the lessee of the Boston and Albany Railroad Company has a right to bring this action," they must be sustained. "A third person cannot maintain an action on a sealed instrument to which he is not a party." *Cavanaugh Bros. Horse Co.* v. *Gaston,* 255 Mass. 587, 590.

The defendant's exception to the exclusion of the offer of

proof, in which circumstances surrounding the execution of the lease are set forth tending to prove, it is contended, that the defendant was not under a liability to pay irrespective of use, must be overruled. Under the law of this Commonwealth such evidence is inadmissible when the agreement is unambiguous in its terms. *Snider* v. *Deban*, 249 Mass. 59, 61.

The defendant asked a witness on cross-examination the following question: "Did the New York Central Railroad Company by its own or leased or controlled lines during the period from 1902 to 1921 have its own routes and access to territory to the southwest of Maybrook and Campbell Hall, and did the New York Central own or control lines as part of its system in the territory southwest of Campbell Hall, particularly of such centers as Scranton, Wilkesbarre, Williamsport, and Pittsburgh, Pennsylvania?" The defendant saved an exception to the exclusion of this question and then offered to prove by the same witness that "the plaintiff, . . . by its own and leased or controlled lines had its own route and access to the territory to the southwest of Maybrook and Campbell Hall, and that the lines owned and controlled by the plaintiff as a part of its railroad system extended to the same strategic points in the territory to the southwest of Campbell Hall as did the lines of the carriers with which the defendant connected at Maybrook and Campbell Hall; that the route of the defendant and the lines with which it connected at Campbell Hall and Maybrook was the shorter and more direct route from Springfield, Massachusetts, to the coal territory in a generally southwesterly direction and particularly to such centers as Scranton, Wilkesbarre, Williamsport, Clearfield, and Pittsburgh, Pennsylvania; and that after the lease by the plaintiff of the Boston and Albany Railroad, which up to that time had been an independent carrier with no particular western or southwestern affiliations, any traffic from Springfield and points east destined for the territory to the southwest of Campbell Hall would, in the ordinary course of events, be and was taken by the plaintiff and routed over its own line, even though the defendant's route was more direct; thus depriving the defendant of the

through traffic which the plaintiff knew, and which was contemplated by the parties to the original agreement of 1898 and 1899, to be the only possible means of operation on its Springfield branch without loss." The trial judge rejected this offer of proof and an exception was duly saved.

The defendant offered its certificate of incorporation to show the men who were its organizers and the fact that they knew and fully understood that it was possible to operate without loss, to Springfield, Massachusetts, only by through traffic from and to Springfield and points east, to and from the territory southwest of Maybrook and Campbell Hall, and that such through traffic was the means of performance contemplated and relied on by them in executing the agreement of October 25, 1899. This offer was rejected and the defendant's exception duly saved.

The defendant made the following offers of proof: ". . . in 1898 and thereafter the plaintiff and the Boston and Albany Railroad Company knew that local traffic from and to other stations on the Central New England Railway Company and Springfield and points east thereof could not possibly be sufficient to permit the operation of the branch line, constructed in pursuance to the agreement and reorganization of 1898, without tremendous loss, and that the only means of operating said line without loss was by obtaining through traffic from and to points in the territory to the southwest of Campbell Hall and Maybrook and Springfield and points east thereof; . . . That the persons who organized and/or controlled the defendant corporation in 1898 at the time of reorganization and arrangement which resulted in the agreement sued on were influential in and thoroughly familiar with the operations of and the control of the Boston and Albany Railroad Company, and particularly closely associated with the men in charge of . . . [that company]; that the parties to the agreements of May 9, 1898, and October 25, 1899, fully understood that the branch line of the defendant could not be operated nor the agreement performed unless through traffic over the defendant's route from and to Springfield and points east to and from the territory to the southwest of Maybrook and Campbell Hall was developed;

that such through traffic was the means of performance contemplated and relied on by the parties to this original arrangement of 1898 and the destruction and failure of such through traffic has taken from operation by the defendant under the agreement the expected value of performance and destroyed the only possible and the contemplated means of operation and performance without loss. . . . that the plaintiff, with knowledge . . . [of] the only possible means of operation under and performance of the agreements of May 9, 1898, or October 25, 1899, . . . after it had leased the Boston and Albany Railroad, refused to allow, permit or join with the defendant in establishing such through rates and affirmatively took steps to obtain and keep for itself all traffic to and from Springfield and points east and points to the west, southwest or south. . . . that the men who organized and/or controlled the defendant corporation in 1898 and at the time of the organization and arrangement which resulted in the agreement sued on included a director of the Boston and Albany Railroad Company, who was also a brother-in-law of the then president and a son of the former president of the Boston and Albany Railroad Company; and that the men who owned a voting control of the defendant at the time of its organization and for a time thereafter were a son of a former president of the Boston and Albany Railroad and a blood relation of his, the former of said men being also a brother-in-law of the then president and the then vice-president of the Boston and Albany Railroad Company, both of which gentlemen were sons-in-law of a former president of the Boston and Albany Railroad Company."

The defendant also offered to show "that at Maybrook and Campbell Hall, New York, it had connections with numerous through carriers serving directly the territory to the west, southwest and south, in particular, the Pennsylvania Railroad system, the Baltimore and Ohio, the Erie, the Delaware, Lackawanna and Western, the Lehigh and New England and the Lehigh and Hudson Railroad." The defendant excepted to the exclusion of this offer of proof. The admissibility of it as indicating the circumstances under which the agreement was made has been previously discussed.

The defendant argues that all its exceptions to the exclusion of the evidence thus offered should be sustained. The offers of proof were properly excluded. The defendant, in substance, is seeking to have read into the agreement stipulations on the part of the Boston and Albany Railroad Company not to compete, and to undertake to divert traffic to the defendant's lines. The principle, that, if one party to a contract hinders performance by the other party, performance by the latter is excused, does not warrant placing such an interpretation upon the contract the parties have chosen to make. Moreover, the fact that the defendant became a party to the agreement relying upon certain traffic to prevent it from operating at a loss, a fact that was within the knowledge of the other party, will not excuse performance by the defendant if such traffic is not obtained. *John Soley & Sons, Inc.* v. *Jones,* 208 Mass. 561. *Morse* v. *Boston,* 260 Mass. 255, 263, and cases cited.

It is contended that the certificate of the interstate commerce commission was admissible upon the question of repudiation of the agreement; that the certificate is set forth as the reason for the discontinuance of the operation of the road in two of the four letters on the basis of which the jury were instructed that they could find that the agreement was repudiated. The certificate is not material upon the question of repudiation because it does not justify the repudiation. The fact that the defendant believed it was justified in acting as it did is of no legal consequence.

The defendant argues that the correspondence between the president of the Central New England Railway and the vice-president of the Boston and Albany Railroad was improperly admitted. Objections were made and exceptions saved to the admissibility of some of these letters at the time of their introduction, and subsequent to the introduction of all the letters a motion was made to strike out all the correspondence after the letter of November 9, 1921, to the denial of which an exception was saved. The judge at the time of the denial of this motion instructed the jury that "the letters have been admitted solely upon the question whether the defendant Railroad Company abandoned the contract that

it had with the plaintiff Railroad Company, and for no other purpose." If it be assumed that the letters were written for settlement purposes, they were admissible, nevertheless, to establish an abandonment of the agreement, within the principle that evidence of an admission by a party of a fact which is not itself being discussed by the parties in connection with the proposed settlement is competent although made in the course of the settlement proceedings. *Dickinson* v. *Dickinson*, 9 Met. 471, 474. *Durgin* v. *Somers*, 117 Mass. 55, 61. Wigmore on Evidence (2d ed.) § 1061. The case is not similar in this respect to *Garber* v. *Levine*, 250 Mass. 485, 489, 490. In the circumstances here disclosed we do not think the defendant was harmed by the allowance of the single letter, dated January 3, 1922, which bore the legend "without prejudice."

The defendant offered in evidence figures showing the cost of the maintenance of way, superintendence, dispatching trains, signal and interlocker operation, crossing protection and telephone and telegraph operation for each year from 1921 up to and including 1925 on the entire system of the Boston and Albany Railroad Company; and also, figures showing the total mileage of both freight and passenger trains and cars operated upon the entire system during the same period. Under the agreement the defendant had the right to use all present and future water stations and other facilities necessary for the accommodation of trains and the traffic to be transported by them over the leased lines. The Boston and Albany Railroad was required in connection with the passenger business of the defendant to sell tickets, handle baggage, and take care of passenger trains in its passenger yard and transfer through passenger cars to connecting lines; and it was to receive compensation for the transferring and switching of freight cars. The defendant desired to show the plaintiff's gain from the cessation of operation of the defendant's trains by dividing the total cost by the total mileage, as shown by the figures, and thus derive the average cost per mile. The plaintiff did not deny the accuracy of the figures but objected to their admissibility on the ground of remoteness and irrelevancy to the issue. The lack of uni-

formity in costs which necessarily exists in various sections of the system warranted the rejection of this evidence by the judge in the exercise of a sound discretion.   See *Dow* v. *Bulfinch,* 192 Mass. 281, 285, 286.   For the same reason the figures showing the cost, over the entire system, of locomotive repairs, other locomotive supplies, enginehouse expenses, train supplies and expenses and the total freight expenses for the month of December, 1921, were properly excluded.

The defendant has not been harmed by the admission of any evidence relating to the profit derived by the plaintiff from freight movements.   The judge instructed the jury in accordance with the plaintiff's third additional request that "In considering any offsets to the plaintiff's rights to recover the value of $15,000 payment, you should exclude from your consideration any interference to the plaintiff's traffic by reason of switching movements, so called, for which the plaintiff was entitled to additional compensation and for which they claim no profits in this action.   That, you see, refers to the provision in the contract allowing the Boston and Albany $2 for transfer or switching to Boston and Maine or New York, New Haven and Hartford connections and thirty cents for taking cars in the Springfield yard.   This excludes from your consideration any testimony in regard to delays in the Springfield yard due to switching Central New England freight cars and making up or breaking up Central New England trains.   As these switching movements would be paid for under another part of the contract, this evidence falls within the agreement of counsel and is not to be considered by you.   Also you should disregard any figures in regard to delays or whether due to freight cars or freight trains operated between the west end of West Springfield yard and Springfield, as these items also fall within that part of the contract for which the plaintiff is claiming no damage . . . .   You may consider, however, in assessing damages, what offsetting benefits the plaintiff has received by reason of being relieved of the operation of trains over its railroad as distinguished from switching operations I have referred to. And in this connection I grant the following requests for instruction: The plaintiff cannot set off against any benefit to

be derived by it because of the failure of the defendant to operate the full number of trains allowed by the contract, any possible profit to be derived by the plaintiff from switching operations or other supplementary privileges mentioned in the contract.   The jury cannot consider any figures relating to profit to be derived from switching operations to and from West Springfield yard to the Boston and Maine, New York, New Haven and Hartford or Springfield freight house.   The plaintiff . . . is not and does not claim to be entitled to any profit which may have accrued to it by reason of those special switching or transfer operations . . . .   The jury will not consider any figures relating to revenue or expenses to be derived from the transfer of cars to and from the West Springfield yard and the Boston and Maine Railroad, the New York, New Haven and Hartford Railroad, or for points in Springfield except as I have already intimated to you . . . [and] The jury shall not consider any benefits resulting to the plaintiff by reason of freedom from interference caused by transfers from and to the West Springfield yard and the Boston and Maine Railroad, the New York, New Haven and Hartford Railroad, or for points in Springfield."

The defendant argues that its exception to the granting of this last request should be sustained for the reason that "the breaking up Central New England trains" was not within the subject matter of its disclaimer.   If the words "the breaking up Central New England trains" are read in their context, it is apparent that the judge was referring to movements of trains for which the Boston and Albany Railroad Company was entitled to specific compensation.   The instruction is somewhat lacking in clarity, but if read in its entirety it indicates that the jury were to take into consideration, in determining the benefit derived by the Boston and Albany Railroad Company from the cessation of operation, all interference from trains and cars, except those for the movement of which under the terms of the contract it was entitled to specific compensation in addition to the annual rental.   The words "breaking up" were not used in the sense the defendant contends they were used.   It follows that this exception must be overruled.

The defendant offered to show "that the right of way of the Boston and Albany Railroad Company between the west end of the West Springfield yard and Agawam Junction, Massachusetts, over which run the tracks of the said Boston and Albany Railroad Company and over which are operated the trains of the Boston and Albany Railroad, New York Central Railroad Company, lessee, is not and was not in 1898 and 1899 owned in fee by the Boston and Albany Railroad Company for a distance of more than 1200 feet; that for said distance of 1200 feet said right of way was obtained under and by virtue of a location made by the Western Railroad Company in pursuance of provisions of chapter 116 of the acts of the Legislature of Massachusetts for 1833 and by virtue of a confirmatory location of the Boston and Albany Railroad Company." An exception was saved by the defendant to the exclusion of this offer. The offer of proof was rightly excluded. A statutory taking for general railroad purposes is broad enough to permit the agreement entered into by the parties in the present case. See *Morse* v. *Goddard*, 13 Met. 177, 179, *Gage* v. *Campbell*, 131 Mass. 566, and *Curtis* v. *Goodwin*, 232 Mass. 538, 541.

The third paragraph of the agreement between the parties provided that the Boston and Albany Railroad Company should, among other things, "take care of passenger trains in its passenger yard." The judge left to the jury the question whether these words meant simply that the Boston and Albany Railroad Company was to place the cars as they were needed by the Central New England Railway Company or whether it was to sweep out the cars and wash the car windows, and instructed the jury in this connection that the manner in which the parties by their conduct interpreted this clause was to be taken into consideration. It is not, and could not be, contended successfully that the testimony of the vice-president of the Boston and Albany Railroad Company to the effect that the plaintiff was obligated under the agreement to sweep out the cars and wash the car windows was binding upon the plaintiff. The words as used in the contract were of doubtful meaning and, therefore, the exception of the defendant to the instruction given must be

overruled. *Boston & Albany Railroad* v. *New York Central Railroad*, 256 Mass. 600, 609.

We have considered all the exceptions of the defendant and find no reversible error, provided within ten days after rescript the plaintiff amends its writ by substituting the words "The Boston & Albany Railroad Company, Assignor for the benefit of The New York Central Railroad Company, Assignee," in place of the words "The New York Central Railroad Company" as plaintiff therein, leave to make such amendment being hereby granted. *Currier* v. *Howard*, 14 Gray, 511, 513. *Pizer* v. *Hunt*, 253 Mass. 321, 331. Since the defendant's exceptions are overruled the plaintiff consents that its exceptions be overruled.

<div align="right">

*Exceptions of defendant overruled.*
*Exceptions of plaintiff overruled.*