Cook *v.* Kelley.

HOWARD W. COOK *vs.* GEORGE W. KELLEY & others.

Bristol.    March 8, 1967. — June 7, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Mistake.    Fraud.    Contract,* Rescission.    *Equity Jurisdiction,* Rescission.

The buyer of an unofficial newspaper published by the seller "in the interest of personnel" of an Air Force Base and using only material "furnished by" the Air Force, apart from advertising procured by the seller, under a contract between the Air Force and the seller providing that the Air Force could cancel the contract on short notice, was not entitled to rescind the sale by reason of alleged mutual mistake of the buyer and the seller at the time thereof that "the publishing rights were going to last three years," whereas the Air Force cancelled the publishing rights in less than six months, or by reason of alleged fraud on the seller's part in that he represented that he was the "owner and proprietor" of the newspaper or "of its publishing rights," whereas the Air Force possessed such rights, and in that the seller failed to disclose to the buyer the existence and contents of the contract with the Air Force, where it appeared that the seller did own the right to publish the newspaper with the permission and coöperation of the Air Force and that at the time of the sale the seller's attorney informed the buyer that "there was no guarantee on the part of . . . [the seller] that . . . [the buyer] would be able to continue the publication of the newspaper for any specific period of time."

BILL IN EQUITY filed in the Superior Court on December 21, 1961.

The suit was heard by *Good,* J., on a master's report.

*Joseph J. Hurley* for the defendant Kelley.

*Francis X. Carroll* for the plaintiff.

SPIEGEL, J.    This is a bill in equity to rescind the sale of a newspaper on the grounds of mutual mistake or fraud. The defendant Kelley filed a counterclaim for the unpaid balance of the purchase price.    The case was referred to a master.    The plaintiff and the defendant Kelley both objected to the master's report.    An interlocutory decree was entered overruling their objections (treated as exceptions) and confirming the report.    A final decree was entered

granting rescission, ordering the defendant Kelley to repay the amount he received, less a certain credit, and dismissing the counterclaim.[1]   The plaintiff and the defendant Kelley appealed from the interlocutory and final decrees.

We state the material facts found by the master.   Kelley "was the owner of a tabloid newspaper called 'Otis Notice.' "   It was printed weekly at The North Attleborough Chronicle Company, of which Kelley was a stockholder. "The Otis Notice was . . . circulated amongst the families of the Air Force personnel serving at the Otis Air Force Base in Falmouth . . . . Kelley procured advertising for said newspaper on his own and all the profits from the advertising were his.   The news items in the paper were collected by . . . Air Force personnel."

Kelley began publishing the newspaper in November, 1956.   By December, 1960, the circulation was six thousand five hundred and Kelley's annual profit was "at least $20,000."

During the first year Kelley operated under a written contract with the Otis Air Force Base.   In succeeding years he "operated without any written contract and no objection was made by anybody concerned to the fact that he was so operating."   The written contract was terminable by either party on sixty days notice, or without notice by the Air Force where it "determines that an emergency exists or that the exigencies of the service demanded such action."

From the contract, which was an exhibit referred to in the master's report and is a part of the record on appeal, it appears that the Otis Notice was to "be an unofficial newspaper published in the interest of personnel of Otis Air Force Base, for the purpose of providing news and infor-

---

[1] The final decree also included the following: "4.   That there is presently owed to the defendant, George W. Kelley by the defendant, North Attleborough Chronicle Company, the sum of $19,414.00 and the sum of $100.00 per week is due the defendant, George W. Kelley each week from September 14, 1965 until January 1, 1973 from the North Attleborough Chronicle Company. 5.   That in the event the defendant, George W. Kelley, shall fail to pay the said sum of $24,969.60 as ordered, the defendant, North Attleboro Chronicle Company shall pay to the plaintiff, Howard W. Cook, the sum of $19,414.00 as a partial payment and the balance of this decree, to wit, $5,555.60 by payments of $100.00 each week from September 14, 1965 until this decree plus interest has been paid in full."

mation of particular interest to such personnel.'' Kelley was referred to as ''the Publisher.'' The Air Force was to furnish all news copy and photographs and editorials and ''the Publisher agrees to use only . . . [that material] furnished by'' the Air Force. The minimum size of the paper was set by the contract, as well as limitations on the amount and type of advertising. The Publisher was required to state in the paper and in its business dealings that the paper was not an official Air Force publication.

The plaintiff entered into negotiations with Kelley in the fall of 1960 ''for the sale of the publishing rights to the Otis Notice.'' A letter of intent was drawn on January 26, 1961, by Kelley's attorney in which ''Kelley agreed to incorporate the Otis Notice and . . . [the plaintiff] agreed to pay him $40,600.00 for the said corporation.'' The letter was signed by Kelley and assented to in writing by the plaintiff. ''The corporation was formed and then the final agreement was signed'' on February 15, 1961. Ninety of the one hundred shares of the new corporation were distributed to the plaintiff and Kelley retained the remaining ten shares until payment in full by the plaintiff. Payment of $25,000 was to be made by check and a note for $15,250,[2] payable at $100 a week for three years, was to be given by the corporation and guaranteed by the plaintiff. The plaintiff's shares were assigned to Kelley as security for the payment of the note.

The plaintiff consulted with his attorney in Rhode Island before the final papers were signed.

On June 23, 1961, the plaintiff received a letter from the Air Force which stated that ''we have decided to terminate publishing 'The Otis Notice' . . . as of July 31, 1961.'' The reason given was the remoteness of the publishing facilities from the base which resulted in undue expense and insufficient ability of the Air Force to ''properly edit and supervise the publication.''

---

[2] ''Despite the fact that the letter of intent mentioned a figure of $40,600.00 as the intended purchase price, the actual agreements signed involved only $40,250.00, but neither party raised any question about this discrepancy, and both agreed that the note was in the amount of $15,250.00 and that the sum of $26,400.00 had been paid to Kelley.''

"Neither Kelley nor the corporation owned any physical assets, and it was understood by both parties that what was represented by the shares of stock were the publishing rights and the good will of the newspaper business of the Otis Notice as it had been built up by Kelley, and transferred by him to . . . [the plaintiff] at the time of the sale."

"[T]here . . . has been $1,400.00 paid on the principal of the note, leaving a balance of $13,850."

"At the time of the execution of the agreement and the various documents connected with the sale, both parties believed that the publishing rights were going to last three years, although . . . [Kelley's attorney] had informed . . . [the plaintiff] that there was no guarantee on the part of Kelley that . . . [the plaintiff] would be able to continue the publication of the newspaper for any specific period of time."

From the foregoing subsidiary findings the master concluded "that there was no fraud on the part of Kelley, but that there was a belief on the part of both, later found out to be mistaken, that the publication rights would last three years . . . [and] that the plaintiff is entitled to have returned to him the sum of $26,400.00 . . . minus . . . $6,000.00 which he received while operating the newspaper, and that the . . . note . . . should be cancelled . . .; that both parties believed that the corporation owned the rights to the publication of Otis Notice, and, insofar as it is a question of fact, . . . that the corporation did own the same rights that . . . Kelley had previous to the formation of the corporation. . . . However, if as [a] matter of law on the facts found, the plaintiff is not entitled to rescind the sale . . . there is presently due on the note . . . $13,850.00, with interest at the rate of 6% . . . from June 22, 1961, the date of the last payment thereon."

## The Defendant's Appeal.

It is apparent that the only basis for concluding that there was a "mutual mistake" was the master's finding of a "belief on the part of both, later found out to be mistaken,

that the publication rights would last three years.'' Such
a conclusion ignores the specific finding of the master that
the plaintiff had been informed by Kelley's attorney ''that
there was no guarantee on the part of Kelley that . . . [the
plaintiff] would be able to continue the publication of the
newspaper for any specific period of time.''

To justify rescission of a contract for a mutual mistake
of fact the mistake must be about a matter of *fact,* capable
of ascertainment, and not a mere expectation. ''Neither
side can rescind the contract merely because the known and
assumed risk turned out to be greater than either or both
expected it to be.'' *Aldrich* v. *Travelers Ins. Co.* 317 Mass.
86, 88. *New York Cent. R.R.* v. *Central New England Ry.*
264 Mass. 128, 153, affd. sub nom. *Central New England
Ry. Co.* v. *Boston & Albany R.R.* 279 U. S. 415. *Eno* v.
*Prime Mfg. Co.* 317 Mass. 646, 650–651. *Baetjer* v. *New
England Alcohol Co.* 319 Mass. 592, 601. The erroneous
belief that the publishing rights to the Otis Notice would
last three years was a matter of hope and expectation, not
a mistake of fact justifying rescission.

The plaintiff argues that the ''belief that the publishing
rights would last three years . . . was . . . a mistake of
fact *in the circumstances,* and not a mere matter of opinion
as to a future event, because . . . it was coupled with . . .
false statements as to ownership . . . [and] concealment of
material facts as to ownership.'' He also argues that
''[i]t was fraud for . . . Kelley to represent to the plain-
tiff . . . that he was the owner and proprietor of the 'Otis
Notice' or of its publishing rights, because . . . such words
connote exclusive rights which the Air Force possessed
rather than Kelley . . . [and] Kelley knew to the con-
trary.'' But the master specifically found that Kelley
''was the owner of a tabloid newspaper called 'Otis No-
tice.' '' It is clear from the master's report that Kelley
did own the right to publish such a newspaper for the per-
sonnel of Otis Air Force Base. Of course, without the per-
mission and coöperation of the Air Force the paper could
not have been published. However, the power of the Air

Force to terminate that permission on short notice did not make Kelley any less "the owner" of the publishing rights. In view of the master's finding that Kelley's attorney informed the plaintiff of the inability of Kelley to guarantee that the publishing rights would last any specific length of time, there is no merit to these arguments of the plaintiff. In view of the foregoing the defendant Kelley is entitled to prevail on his counterclaim.

### THE PLAINTIFF'S APPEAL.

The plaintiff argues that "there was fraud as a matter of law on the facts found" first, because Kelley was not the "owner" of the paper and second, because he failed to disclose the existence and contents of the 1956 contract between him and the Air Force.

The first point is disposed of by the discussion above. The relevance of the second point is urged by the plaintiff to be: "It was fraud for . . . Kelley not to disclose to the plaintiff . . . the existence of and contents of the 1956 Air Force contract and its cancellation, because these were material facts showing that the attributes of control and ownership were in the Air Force and not in . . . Kelley, and because he had a duty to make this full disclosure to the plaintiff." But in view of the master's finding that the plaintiff had been informed that no guarantee could be made as to the length of time the publishing rights would last, it was immaterial that the 1956 contract and its cancellation had not been disclosed.

### CONCLUSION.

The interlocutory decree is affirmed. The final decree is reversed and a new final decree is to be entered dismissing the bill and ordering the plaintiff to pay to the defendant Kelley the sum of $13,850 with interest at the rate of six per cent per annum from the date of the last payment on the note.

*So ordered.*