**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOSE LUIS HUERTA,

    Petitioner,

v.

ALBERTO R. GONZALES,[*] Attorney
General,

    Respondent.

No. 04-9542

**PETITION FOR REVIEW OF A DECISION OF THE
BOARD OF IMMIGRATION APPEALS**
**(No. A-92-346-660)**

Sandra Saltrese-Miller, Boulder, Colorado, for Petitioner.

James E. Grimes, Attorney, Office of Immigration Litigation (Mary Jane
Candaux, Senior Litigation Counsel, with him on the brief), Civil Division, U.S.
Department of Justice, Washington, D.C., for Respondent.

Before **HENRY, McKAY**, and **TYMKOVICH,** Circuit Judges.

**McKAY**, Circuit Judge.

---

    [*] On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ascroft as a
Respondent in this action.

In 1990, Petitioner became a lawful permanent resident alien of the United States pursuant to 8 U.S.C. § 1255(a). In 1999, Petitioner was convicted in Colorado state court of conspiring to sell marijuana. As a result, the Immigration and Naturalization Service ("INS") served Petitioner with a Notice to Appear informing him that he was removable from the country under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B), (U) ("aggravated felony" includes conspiracies to illicitly traffic controlled substances).

In the removal hearing, Petitioner contested all of the INS's allegations in the Notice to Appear, including the fact of his alienage. Petitioner asserted that he was born to agricultural workers in Salinas, California, on March 12, 1973, but that his birth was not registered in the United States at that time. Though Petitioner possessed a Mexican birth certificate, he asserted at the removal hearing that the certificate was fraudulently obtained by his parents in 1987 "so [Petitioner] could have some documentation as to his identity." A.R. at 173.

At the conclusion of the testimony regarding Petitioner's alienage, the immigration law judge continued the proceedings. Before the next hearing, INS Special Agent Anthony Rouco investigated Petitioner's alienage and concluded that Petitioner was issued a Mexican birth certificate that was officially registered

-2-

in Mexico in 1973. Agent Rouco obtained a copy of the Mexican birth certificate and learned from an official in the Mexican Attorney General's office that it would have been "virtually . . . impossible" for Petitioner's family to have paid someone in 1987 to falsely list Petitioner's birth in the Mexican records in 1973. *Id.* at 229. Agent Rouco's investigation also revealed that Petitioner had made prior declarations of Mexican birth to government officials. In 1992, he claimed to be "[a]n alien lawfully admitted for permanent residence." *Id.* at 276. In 2000, he told Denver police officers that he was from Mexico when he was arrested in Colorado. And finally, he claimed that he was born in Mexico when he applied for a social security card. Based largely on Agent Rouco's findings, the immigration law judge held on July 18, 2000, that Petitioner was an alien, and, as such, was removable from the United States as an aggravated felon.

Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on August 18, 2000–one day after the thirty-day deadline for filing such an appeal had expired. *See* 8 C.F.R. § 1003.38(b) (2005). On December 14, 2001, Petitioner obtained a "delayed registration of birth" from a California court. The BIA overlooked Petitioner's late filing and remanded the case to the immigration law judge for additional consideration based on the newly obtained California birth certificate. On remand, the immigration law judge again found the Mexican birth certificate to be legitimate and reaffirmed his earlier judgment and removal

-3-

order. Once again, Petitioner appealed the decision to the BIA. On November 21, 2003, the BIA affirmed the immigration law judge's determination. Petitioner did not file a petition for review of that decision.

On September 18, 2003, Petitioner obtained a United States passport from the State Department. He then moved the BIA to reopen his case, alleging that the passport was "conclusive proof" of his American citizenship. In opposition to Petitioner's motion, the Department of Homeland Security presented a letter to the BIA from the State Department which revoked Petitioner's passport, based on its determination that he was born in Mexico. On April 5, 2004, the BIA denied Petitioner's motion to reopen because the only basis for his motion–his U.S. passport–no longer existed. Petitioner then applied to this court for review of the BIA's April 5, 2004, denial of the motion to reopen.

We first address whether Petitioner's untimely filing of his appeal–missing the deadline by one day–deprived the BIA of jurisdiction to hear Petitioner's case. We have jurisdiction over a case only when jurisdiction over the underlying order was proper, *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361-62 (10th Cir. 2004), and we review issues of jurisdiction de novo, *Angle v. United States*, 996 F.2d 252, 253 (10th Cir. 1993). The question before us is whether non-compliance with the filing deadlines governing appeal to the BIA constitutes a jurisdictional defect that prevents us from addressing the merits and renders all action subsequent to

the untimely filing a nullity.  Jurisdictional challenges can be made by any party or the court at any time and are not subject to waiver or forfeiture.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998).  Alternatively, compliance with the regulation's timeliness requirement could be mandatory, but forfeitable.

BIA regulations require that an appeal from an immigration judge's ("IJ") decision must be made within thirty days of the decision.  8 C.F.R. § 1003.38(b).  In this case, the IJ's decision was issued on July 18, 2000, which gave Petitioner until August 17, 2000, to file an appeal, a deadline that the written order highlighted.  A.R. 145.  The BIA, however, received Petitioner's notice of appeal on August 18, 2000.  Despite the non-compliance with the regulatory filing deadline, and without any objection from the government, the BIA proceeded to address the merits of Petitioner's claims, remanded the case to the IJ, and heard the second appeal from the IJ's decision.  Now, for the first time, the government argues to us that the untimely filing of the appeal deprived both the BIA and this court of jurisdiction.  Because we hold that the regulation governing the timely-filing of a notice of appeal is mandatory but not jurisdictional, we hold that the BIA properly exercised its jurisdiction and that we, therefore, also have jurisdiction over Petitioner's claims.

The recently decided Supreme Court case *Eberhart v. United States*,

provides some guidance in distinguishing "'between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule.'" 546 U.S. ___, 126 S. Ct. 403, 403 (2005) (per curiam) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)). This is a muddled area of the law in which courts have confused the terms mandatory and jurisdictional. *See id.* at 407 (appreciating the difficulty of the circuit court's task in interpreting confusing Supreme Court precedents in this area); *United States v. Flowers*, ___ F.3d ___, No. 04-3206, 2006 WL 715756, at *2 (10th Cir. Mar. 22, 2006). Indeed, in *Eberhart*, the Court recognized that courts have been "less than meticulous" in their application of the term "jurisdictional." *Kontrick*, 540 U.S. at 454. Courts "have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions in rules of court." *Id.*; *see also Flowers*, 2006 WL at *2. *Eberhart* provides some clarity to this area of the law.

In *Eberhart*, the defendant was convicted on drug charges and made an untimely motion for a judgment of acquittal or new trial. *Id.* at 404; Fed. R. Crim. Proc. 33, 45. But the government did not raise the untimeliness argument and instead opposed defendant's arguments on the merits. *Id.* The district court granted the motion for a new trial, but it was not until the appeal that the government raised the untimeliness argument. *Id.* The court of appeals held that defendant's untimely filing deprived the district court of jurisdiction. *Id.* The

Supreme Court reversed the circuit court's decision, holding that the filing requirements were not jurisdictional. The Court held that the timeliness requirements are mandatory–they required the court to "observe the clear limits of the Rules of Criminal Procedure when they are properly invoked"–but they are "forfeitable when they are *not* properly invoked." *Id.* at 406. The Supreme Court has similarly held that other timeliness requirements are not jurisdictional. *Kontrick*, 540 U.S. at 458-60 (holding that time limitations defenses under the federal bankruptcy rules are only available if a party timely files); *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004) (holding that timeliness requirements for applications for attorney's fees do not go to subject-matter jurisdiction); *Carlisle v. United States*, 517 U.S. 416, 454-55 (1996) (holding that a court may not grant an untimely postverdict motion for a judgment of acquittal when the prosecutor objects).

The BIA regulations governing appeals are claim-processing rules as described in *Eberhart*. The thirty-day filing requirement controls the BIA's power to entertain an appeal from the IJ, but it does not go to the BIA's general subject-matter jurisdiction to hear appeals from the IJ. The requirement is, therefore, mandatory–if the government had properly objected on timeliness grounds, the BIA would have been without power to hear the appeal–but not jurisdictional–because, as in *Eberhart*, the government forfeited that objection.

We recognize that the Ninth Circuit has reached the opposite conclusion. In *Da Cruz v. INS*, 4 F.3d 721 (9th Cir. 1993), a case with facts virtually identical to ours, the Ninth Circuit vacated a BIA decision because the INS was one day late in filing its appeal of the IJ's decision. *Id.* at 722. In light of *Eberhart*, however, we respectfully decline to follow *Da Cruz* and are persuaded that the BIA appeals requirements are claim-processing rules and not jurisdictional. Because the government responded on the merits to Petitioner's late-filed appeal in this case, it has forfeited its timeliness objection and we have jurisdiction to address Petitioner's appeal.

But because Petitioner never appealed the BIA's final deportation order, we limit our review to the BIA's denial of Petitioner's motion to reopen and the basis of that motion–Petitioner's once valid U.S. passport. We review the BIA's denial of a motion to reopen for abuse of discretion. *Infanzon*, 386 F.3d at 1362. Motions to reopen "do[] not contest the correctness of (or simply request a reevaluation of) the prior decision" but instead "seek[] to reopen proceedings so that new evidence can be presented and so that a new decision can be entered . . . ." *Matter of Cerna*, 20 I. & N. Dec. 399, 403 (BIA 1991); *see also* 8 U.S.C. § 1229a(c)(7)(B) ("The motion to reopen shall state the new facts that will be proven . . . .").

The BIA was properly within its discretion to deny Petitioner's motion to

reopen. Petitioner argues that we should forgive his failure to appeal the BIA's November 21, 2003, final deportation order and expand our review to include review of all Petitioner's evidence of U.S. citizenship because Petitioner's possession of the passport rendered an appeal of the BIA's November 21, 2003, deportation order unnecessary. Petitioner's failure to appeal that order, however, prevents us from addressing any evidence of citizenship from that proceeding. *See Nahatchevska v. Ashcroft*, 317 F.3d 1226, 1227 (10th Cir. 2003) (per curiam). Our review is therefore limited to whether the BIA abused its discretion in denying Petitioner's motion to reopen–a motion that was based on the newly-acquired passport. And in response to Petitioner's motion to reopen, the Department of Homeland Security informed the BIA that Petitioner's passport had subsequently been revoked. Being presented with no new evidence on which to reopen Petitioner's case, the BIA was within its discretion to deny Petitioner's motion.

Accordingly, we **AFFIRM** the BIA's denial of Petitioner's motion to reopen.