# United States Court of Appeals
## For the First Circuit

No. 18-2043

CRAIG R. JALBERT, in his capacity as
Trustee of the F2 Liquidating Trust, on behalf
of himself and all others similarly situated,

Plaintiff, Appellant,

v.

U.S. SECURITIES AND EXCHANGE COMMISSION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Alex Lipman, with whom William R. Baldiga, Justin S. Weddle, Ashley L. Baynham, and Brown Rudnick LLP were on brief, for appellant.

John B. Capehart, Senior Counsel, Securities and Exchange Commission, with whom Robert B. Stebbins, General Counsel, Michael A. Conley, Solicitor, and Daniel Staroselsky, Senior Litigation Counsel, were on brief, for appellee.

December 20, 2019

TORRUELLA, **Circuit Judge**. Plaintiff-appellant Craig R. Jalbert ("Jalbert"), in his capacity as trustee for the F2 Liquidating Trust, appeals the district court's order granting the Securities and Exchange Commission's ("SEC") motion to dismiss his complaint for lack of subject matter jurisdiction and failure to state a claim. The district court determined that the right to judicial review of the SEC order at issue had been waived as part of a settlement between the SEC and former investment advisory firm F-Squared Investments, Inc. ("F-Squared"). The district court also held that, in any event, Jalbert's claims were only reviewable within the SEC's exclusive statutory review structure, which does not involve the federal district courts. After careful consideration, we affirm on the ground that F-Squared failed to state a claim upon which relief could be granted inasmuch as it waived judicial review by any court.

## I.  Background

**A.  Factual Background**

F-Squared was an SEC-registered investment adviser firm headquartered in Wellesley, Massachusetts. It served clients in the advisor, institutional, retail, and retirement markets. At some unspecified point, the SEC began investigating F-Squared for violations of federal securities laws.

On December 4, 2014, with the threat of administrative and cease-and-desist proceedings looming, F-Squared executed an Offer of Settlement pursuant to Rule 240(a) of the Rules of Practice of the SEC, 17 C.F.R. § 201.240(a) (the "Offer"). The Offer included the following language: "By submitting this Offer, Respondent hereby acknowledges its waiver of those rights specified in Rules 240(c)(4) and (5) [17 C.F.R. § 201.240(c)(4) and (5)] of the Commission's Rules of Practice." Rule 240(c)(4) provides, as relevant to this appeal, that "[b]y submitting an offer of settlement, the person making the offer waives, subject to acceptance of the offer . . . [j]udicial review by any court." 17 C.F.R. § 201.240(c)(4).

The SEC accepted the Offer and settled with F-Squared on December 22, 2014, through the entry of an "Order Instituting Administrative and Cease-and-Desist Proceedings" (the "Order"), to which F-Squared consented. Under the terms of the Order, F-Squared admitted that, between April 2001 and September 2008, advertising materials for one of its investment strategies included statements based on the inaccurate compilation of performance and historical data which improved and inflated the strategy's historical performance. That conduct, F-Squared accepted, violated federal securities laws. F-Squared agreed to cease and desist from committing further securities-laws

-3-

violations and to undertake certain compliance measures. The Order also required F-Squared to pay $30 million in disgorgement and a $5 million civil money penalty to the United States Treasury. As agreed, F-Squared transferred $35 million directly into the Treasury.

In July 2015, F-Squared filed for bankruptcy. The F2 Liquidating Trust was established during the bankruptcy proceedings to recover on behalf of F-Squared as its successor-in-interest. The bankruptcy court appointed Jalbert as the trustee.

## B. Procedural History

On October 26, 2017, Jalbert filed a complaint in the U.S. District Court for the District of Massachusetts against the SEC purporting to represent the F2 Liquidating Trust and "all other individuals and entities similarly situated" who had "money collected from them by the SEC as 'disgorgement' without statutory authority or in excess of statutory authority" during the six years prior to the filing of the complaint. Jalbert asserted two claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., alleging that: (1) in light of the then-recent Supreme Court opinion in Kokesh v. SEC, 137 S. Ct. 1635 (2017),[1] the SEC

_____

[1] Kokesh held that, in the securities-enforcement context, disgorgement is a penalty within the meaning of the five-year limitations period under 28 U.S.C. § 2462 where it is ordered to

-4-

"exceeded its statutory authority by seeking and obtaining disgorgement from F-Squared and the similarly situated members of the Proposed Class as a separate monetary penalty" in both administrative proceedings and federal court actions and (2) the SEC "failed to observe the procedural requirements" of federal securities law by not obtaining an accounting of profits allegedly acquired as a result of wrongdoing before ordering disgorgement. The complaint sought a declaration that the SEC's collection of disgorgement was unlawful pursuant to 5 U.S.C. § 706; the setting aside of the $30 million disgorgement paid by F-Squared under the Order; and a refund of that payment, as well as similar refunds for the putative class members.

---

punish and deter violations of securities laws and is paid directly to the United States Treasury. 137 S. Ct. at 1639, 1643–44. The Court concluded, therefore, that disgorgement actions must be commenced within five years of the claim's accrual. Id. at 1639. The Kokesh Court, however, pointed out that its decision was narrow, for purposes of only the statute of limitations, and was not meant to undermine disgorgement in SEC enforcement actions in federal court. See id. at 1642 n.3 ("Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context[.] The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period."). We note that the Supreme Court recently granted certiorari in a case which presents the question that was expressly avoided in footnote 3 of Kokesh. See SEC v. Liu, 754 F. App'x 505 (9th Cir. 2018), cert. granted, 2019 WL 5659111 (U.S. Nov. 1, 2019) (No. 18-1501).

On April 4, 2018, the SEC filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). On August 22, 2018, the district court entered a memorandum and order granting the SEC's motion to dismiss. Jalbert v. SEC, 327 F. Supp. 3d 287 (D. Mass. 2018). The court determined that it lacked subject matter jurisdiction because Congress vested the courts of appeals with exclusive jurisdiction over challenges to SEC orders. Id. at 296–97, 299–300. It also held that Jalbert had failed to state a claim upon which relief could be granted because "F-Squared, as part of the settlement, clearly and unambiguously waived the right to judicial review by any court." Id. at 295. Jalbert then filed this timely appeal of the district court's dismissal.

## II. Discussion

We review a district court's dismissal for lack of subject matter jurisdiction and for failure to state a claim de novo, construing the complaint "liberally" and treating "all well-pleaded facts as true." Aurelius Capital Master, Ltd. v. Commonwealth of P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 919 F.3d 638, 644 (1st Cir. 2019) (quoting Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015), and citing Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 24 (1st Cir. 2018)). We accord Jalbert "the benefit of all reasonable inferences." Town

-6-

of Barnstable, 786 F.3d at 138 (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). Nevertheless, the complaint must allege "a plausible entitlement to relief." Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

Jalbert's big-ticket argument is that in light of the Supreme Court's decision in Kokesh -- which holds that disgorgement ordered in civil enforcement proceedings constitutes a "penalty" subject to the five-year statute of limitations set forth in 28 U.S.C. § 2462,[2] 137 S. Ct. at 1639 -- the SEC's $30 million disgorgement order against F-Squared was unauthorized under the statutes governing SEC disgorgement because it was a penalty and not a remedial, compensatory charge. Jalbert contends that the SEC intended F-Squared's disgorgement as a penalty because, like in Kokesh, it was ordered to punish and deter conduct, and the proceeds were paid directly into the Treasury rather than returned to the injured investors. But as the district court correctly concluded, we do not need to delve into the merits of these arguments because they are not properly before us.

---

[2] That statute provides, "[e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ." 28 U.S.C. § 2462.

The SEC's Rules of Practice allow "[a]ny person who is notified that a proceeding may or will be instituted against him or her, or any party to a proceeding already instituted [to] propose in writing an offer of settlement." 17 C.F.R. § 201.240(a). The Rules also require an offer of settlement to "recite or incorporate as a part of the offer the provisions of paragraphs (c)(4) and (5) of this section," 17 C.F.R. § 201.240(b), which, as relevant to this appeal, include the waiver, subject to the acceptance of the offer, of "[j]udicial review by any court," § 201.240(c)(4)(v).

F-Squared voluntarily executed such an offer to settle with the SEC. In compliance with 17 C.F.R. § 201.240(b), the Offer included an acknowledgement of F-Squared's "waiver of those rights specified in Rules 240(c)(4) and (5) [17 C.F.R. § 201.240(c)(4) and (5)] of the Commission's Rules of Practice." Thus, as part of the Offer, F-Squared knowingly and voluntarily agreed to waive judicial review of the ensuing order if the SEC accepted it. In due course, the SEC accepted the Offer in its December 22, 2014 Order. See 17 C.F.R. § 201.240(c)(7) ("Final acceptance of any offer of settlement will occur only upon the issuance of findings and an order by the Commission."). Accordingly, the district court properly determined that F-Squared's "clear[] and unambiguous[]" waiver barred the court's

consideration of Jalbert's claims on the merits.  Jalbert, 327 F. Supp. 3d at 295. While Jalbert posits several arguments to the contrary on appeal, none are persuasive.

First, Jalbert argues that the SEC's "longstanding practice of obtaining additional, extra-statutory penalties" disguised as "disgorgement" constitutes a structural separation-of-powers violation that cannot be waived.  Relying on Kokesh, Jalbert's argument assumes that the SEC exceeded its statutory authority in ordering disgorgement that is, according to Jalbert, punitive and unauthorized, which alone is enough to implicate separation-of-powers principles.  But the Kokesh Court explicitly stated that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context," and it limited its holding to the applicability of the five-year limitations period under 28 U.S.C. § 2462 to the SEC's requests for disgorgement.  Kokesh, 137 S. Ct. at 1642 n.3; see also id. at 1640–41.  Indeed, with the enactment of the Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, 104 Stat. 931, Congress explicitly authorized the SEC to enter orders requiring "accounting and disgorgement" in administrative and cease-and-desist proceedings.  See 15 U.S.C.

§§ 77h-1(e), 78u-3(e), 80a-9(e) and (f)(5), 80b-3(j) and (k)(5); see also S. Rep. No. 101-337, at 8, 16 (1990) ("The legislation authorizes the SEC to seek civil money penalties in court proceedings and to impose penalties and order disgorgement in administrative proceedings for violations of the federal securities laws. . . . The Committee believes . . . that the SEC should have the express authority to order disgorgement in its administrative proceedings in order to ensure that respondents in administrative proceedings do not retain ill-gotten gains."). Notably, Kokesh does not even mention the application of disgorgement in the context of administrative or cease-and-desist proceedings. Instead, it addresses disgorgement solely in the civil enforcement context within the meaning of section 2462. Kokesh, 137 S. Ct. at 1639. Thus, the SEC's statutory authority to request disgorgement in administrative proceedings is seemingly undisturbed by Kokesh.

Jalbert does not challenge the statutes granting that authority. Rather, Jalbert's structural separation-of-powers argument is based on his contention that the SEC's disgorgement practices exceed the bounds of the SEC's statutory authority. But this argument does not implicate a structural separation-of-powers issue. We have held that "the doctrine of separated powers serves to eliminate arrangements that threaten to permit one branch either

to aggrandize its power or to encroach on functions reserved for another branch."  United States v. Hilario, 218 F.3d 19, 26 (1st Cir. 2000) (citing Mistretta v. United States, 488 U.S. 361, 381-82 (1989)).  "Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others."  Bond v. United States, 564 U.S. 211, 222 (2011). Even if Jalbert were correct that the SEC acted beyond its statutory powers in interpreting the accounting and disgorgement provision and seeking disgorgement in a "punitive fashion," this is not a case in which the "usurp[ation of] the prerogatives of another branch of government" would be implicated.  Hilario, 218 F.3d at 27.  Further, there is no "accret[ion] to a single [b]ranch [of] powers more appropriately diffused among separate [b]ranches," nor has the "authority and independence" of the other branches been undermined.  Mistretta, 488 U.S. at 382; see also Hilario, 218 F.3d at 26.[3]

As the district court noted, Jalbert's claim that the SEC was acting outside the scope of its statutory authority is, at best, viewed as an assertion that the SEC was acting ultra vires.

---

[3]  Jalbert also takes issue with the cases upon which the district court relied in concluding that F-Squared's waiver was effective because, according to Jalbert, none involved structural separation-of-powers violations.  But because we have determined that Jalbert's claim is not one of structural separation-of-powers violations, we do not address this point any further.

See Jalbert, 327 F. Supp. 3d at 296.  But even if this were true, that claim was waivable.  We agree with the district court's reliance on City of Arlington v. FCC, 569 U.S. 290 (2013), to support its conclusion that ultra vires claims of error can be waived.  See Jalbert, 327 F. Supp. 3d at 296.  In City of Arlington, the Supreme Court rejected as merely "illusory" the distinction, for Chevron purposes, between "jurisdictional" and "nonjurisdictional" agency interpretations and errors.  569 U.S. at 298.  The Supreme Court also defined any "improper" agency action as "ultra vires".  Id. at 297-98.  In doing so, it reasoned that

> A court's power to decide a case is independent of whether its decision is correct . . . .  Put differently, a jurisdictionally proper but substantively incorrect judicial decision is not ultra vires.  That is not so for agencies charged with administering congressional statutes.  Both their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires.  Because the question -- whether framed as an incorrect application of agency authority or an assertion of authority not conferred -- is always whether the agency has gone beyond what Congress has permitted it to do, there is no principled basis for carving out some arbitrary subset of such claims as "jurisdictional."

Id.  Therefore, if the SEC was acting unlawfully in seeking the $30 million disgorgement from F-Squared, its actions were no more ultra vires than if the SEC had misinterpreted its statutes.  And

statutory construction claims are largely subject to waiver. See Boston Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47-50 (1st Cir. 2016) (finding waiver of challenge to the National Park Service's construction of the Land and Water Conservation Fund Act); see also Nat. Res. Def. Council, Inc. v. EPA, 25 F.3d 1063, 1073-74 (D.C. Cir. 1994) (finding waiver of statutory and regulatory construction challenge). Moreover, generally, while jurisdictional issues can be raised at any time during the case and are never waived, non-jurisdictional issues are waivable. See Gonzalez v. Thaler, 565 U.S. 134, 141 (2012); see also Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 446, 449 (1st Cir. 1995).

The Supreme Court's analysis in City of Arlington leads us to conclude that challenges to ultra vires agency action are waivable. Our conclusion comports with other circuits' decisions. See PGS Geophysical AS v. Iancu, 891 F.3d 1354, 1362 (Fed. Cir. 2018) ("Even if the [Patent Trial and Appeal Board of the U.S. Patent and Trademark Office] could be said to have acted 'ultra vires' in refusing to institute reviews of some claims and grounds -- and then proceeding to merits decisions concerning the claims and grounds included in the instituted reviews -- the Board's error is waivable . . . ."); Metro-North Commuter R.R. Co. v. U.S. Dep't of Labor, 886 F.3d 97, 108 (2d Cir. 2018) (relying

-13-

on the Supreme Court's decision in City of Arlington to find that challenges to an agency's jurisdiction over certain claims can be waived); 1621 Route 22 W. Operating Co. v. NLRB, 825 F.3d 128, 139—42 (3d Cir. 2016) (finding the challenge to an agency's jurisdiction was waived); CBS Broad., Inc. v. EchoStar Commc'ns Corp., 450 F.3d 505, 520 n.27 (11th Cir. 2006) (finding the argument that the FCC acted beyond the scope of its authority and, thus, that its action was ultra vires, to be waived); see also Boston Redevelopment Auth., 838 F.3d at 47 (finding the argument waived that because agency action was ultra vires the agency's determination should be reviewed de novo).

Faced with, at most, a claim alleging that the SEC exceeded its jurisdictional authority and acted ultra vires in seeking disgorgement, the district court correctly concluded that the claim was waivable and that F-Squared had undeniably waived the right to assert the claim by settling with the SEC.

Next, Jalbert avers that the waiver does not reach his APA claims because he is not seeking review of the Order and does not intend to "disturb the merits of the SEC's substantive decision" regarding F-Squared's securities laws violations and the amount of the civil penalty. Instead, he contends that he is simply seeking a declaration that the SEC lacks the power to enter

-14-

disgorgement orders, and consequently, the disgorgement against F-Squared is void.

Contrary to Jalbert's contention, by challenging the validity of the disgorgement, he is challenging the Order itself because it was through that Order (to which F-Squared consented) that the SEC directed F-Squared to pay a disgorgement of $30 million into the Treasury. Furthermore, the plain text of the waiver states that it applies to "[j]udicial review by any court." See 17 C.F.R. § 201.240(c)(4)(v). This language is broad enough to encompass claims under the APA because those entail judicial review of an agency decision, see 5 U.S.C. § 706(2)(A)-(F) (providing bases for a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions"), even if Jalbert does not challenge the substantive findings of the Order. When F-Squared chose to settle and execute the Offer, it decided to waive all judicial review by any court without qualification.

Relatedly, Jalbert posits that his challenge to the SEC's disgorgement practices is not limited to F-Squared's disgorgement order but includes a challenge to the SEC's "longstanding practice and procedure of obtaining disgorgement in an unauthorized punitive fashion in a host of cases" on behalf of a putative class of similarly situated parties. This argument, too, is unavailing.

-15-

We have noted that "in most respects, the class members other than the named plaintiffs are merely potential parties until subject matter jurisdiction for the named plaintiffs is established and the district court has decided to certify a class." Pruell v. Caritas Christi, 645 F.3d 81, 84 (1st Cir. 2011). When a class action is filed, it "includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under [Federal Rule of Civil Procedure] 23." Id. (quoting Gibson v. Chrysler Corp., 261 F.3d 927, 940 (9th Cir. 2001)). Here, the district court did not certify a class. It merely determined that it lacked subject matter jurisdiction. Thus, the purported existence of those claims by "similarly situated parties" was irrelevant to the district court's decision to dismiss the case. It is also hard to see how, for the putative class's claim, Jalbert could meet the injury-in-fact requirement of Article III, which requires a plaintiff to establish an injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)); see Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016) ("[T]he injury-in-fact requirement [of Article III] requires a plaintiff to allege an injury that is both 'concrete

-16-

and particularized.'" (emphasis in original) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000))); see also Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) ("[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975))).

Next, Jalbert takes aim at the SEC's use of Rule 240 -- which requires the waiver of judicial review as a condition of settlement -- arguing that it cannot overcome the presumption that SEC actions are judicially reviewable under the APA. He contends that the incorporation of Rule 240 into SEC orders is unlawful because the SEC may not "contract out" of APA review.

To begin, nothing in the record suggests that the purpose or aim of Rule 240 is to overcome the presumption of reviewability of SEC actions under the APA. Surely, before entering into the settlement with the SEC, F-Squared knew or should have known there were avenues, both direct and collateral, to obtain judicial review of an SEC order. Indeed, F-Squared expressly acknowledged in its Offer that it was waiving certain procedural rights. See 17 C.F.R. § 201.240(c)(4)-(5). F-Squared knowingly and voluntarily chose

-17-

to enter into an early settlement and waive judicial review rather than partake in public administrative and cease-and-desist proceedings. We have found that settlements are strongly encouraged by public policy, especially, where "a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990) (citing FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 408 (1st Cir. 1987)).

Moreover, the APA itself requires an agency to give parties opportunity for "the submission and consideration of . . . offers of settlement." 5 U.S.C. § 554(c)(1). The Senate Report accompanying this provision states that "[t]he settlement by consent provision is extremely important because agencies ought not to engage in formal proceedings where the parties are perfectly willing to consent to judgments or adjust situations informally." S. Doc. No. 79-248, at 361 (1946). We note that other agencies have similar regulations requiring the waiver of judicial review as a condition of settling an action with the agency. See, e.g., 16 C.F.R. § 2.32 (FTC regulation requiring that "[e]very agreement [in settlement of an FTC complaint] waive further procedural steps and all rights to seek judicial review or otherwise to challenge or contest the validity of the order"); 47 C.F.R. § 1.94(c)(3)

-18-

(FCC regulation requiring "[a] waiver of the right of judicial review or otherwise to challenge or contest the validity of the consent order" to be included in settlement agreements); 49 C.F.R. § 511.26(d)(2) (DOT regulation requiring an offer of settlement to contain "[a]n express waiver of further procedural steps, and of all rights to seek judicial review or otherwise to contest the validity of the order"). And Jalbert cites no authority for upending a waiver of judicial review contained in a settlement with a governmental agency.

In his final attempt to dodge the waiver, Jalbert invokes contract principles to allege that the waiver is unenforceable because the agreement was infected with a mutual mistake of law. Specifically, Jalbert avers that both the SEC and F-Squared believed the SEC had the authority to obtain the $30 million disgorgement from F-Squared, and that it was not until the Supreme Court's decision in Kokesh that F-Squared realized the mistake. This argument, again, assumes that Kokesh changed the law on SEC disgorgement despite its explicit, narrow holding. And even taking as true Jalbert's assertion that Kokesh changed the law since F-Squared and the SEC settled, that case is silent about agreed-upon disgorgement orders, a product of parties' agreements to settle impending administrative proceedings, like the disgorgement here.

-19-

In any event, under Massachusetts law, "a party cannot avoid a contract merely because the parties are mistaken as to an assumption, even though significant, on which the contract was made." Shawmut-Canton LLC v. Great Spring Waters of Am., Inc., 816 N.E.2d 545, 550—51 (Mass. App. Ct. 2004) (citing Restatement (Second) of Contracts § 152 cmt. c (1981)). "Relief is only appropriate in situations where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis for the contract." Id. at 551 (quoting Restatement (Second) of Contracts § 152 cmt. a). Moreover, the mistake must be based on a fact "capable of ascertainment at the time" the parties entered the contract.[4] LaFleur v. C.C. Pierce Co., 496 N.E.2d 827, 830 (Mass. 1986); Cook v. Kelley, 227 N.E.2d 330, 333 (Mass. 1967). Here, the purported change in law was not "capable of ascertainment" when F-Squared and the SEC entered into the settlement. By Jalbert's own concession, the law was "so well established at the time of the settlement," that "the parties were not settling because of any uncertainty about the SEC's statutory authority to obtain disgorgement. Instead, the parties settled

---

[4] The Restatement (Second) of Contracts clarifies that it does not "draw the distinction that is sometimes made between 'fact' and 'law.'" Restatement (Second) of Contracts § 151 cmt. b. Rather, it "treat[s] the law in existence at the time of the making of the contract as part of the total state of facts at that time." Id.

over the issue of whether there had been a violation of the securities laws." Thus, Jalbert cannot escape the final settlement that F-Squared willingly entered into in 2014 for reasons completely collateral to a then-unforeseeable Supreme Court decision that was handed down nearly three years later to have a second bite of the apple in an attempt to obtain a refund of $30 million.[5]

Unconvinced by Jalbert's arguments that the voluntary, express waiver of judicial review in the Order is void or ineffective, we conclude that the district court correctly decided that the complaint failed to state a claim upon which relief could be granted inasmuch as F-Squared waived judicial review by any court. Having decided that Jalbert's claims are not entitled to judicial review, it is unnecessary to address Jalbert's remaining

_____

[5]  We should also note that Jalbert's request that a party to a final and binding settlement agreement should be allowed to back-pedal when purportedly more favorable law emerges several years later does not comport with this Court's policy favoring settlement "as a preferred alternative to costly, time-consuming litigation." Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008) (quoting Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852 (1st Cir. 1987)). See also Mathewson Corp., 827 F.2d at 852 ("We have characterized a settlement negotiated, as here, 'under the eyes of the court [as] a most solemn undertaking.'" (alteration in original) (quoting Warner v. Rossignol, 513 F.2d 678, 682 (1st Cir. 1975))); id. at 852–53 (finding that we "will enforce the [settlement] without regard to what the result might have been had the parties chosen to litigate" (quoting Terrain Enters., Inc. v. W. Cas. & Sur. Co., 774 F.2d 1320, 1321 (5th Cir. 1985))).

arguments, and our conclusion is sufficient to dispose of this appeal.

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's order.

**<u>Affirmed</u>.**