RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

SONA BARO,

*Petitioner,*

*v.*

No. 25-3894

TODD W. BLANCHE, Acting U.S. Attorney General,

*Respondent.*

─────────────

On Petition for Review from the Board of Immigration Appeals.
No. A 207 654 634.

Decided and Filed:  June 16, 2026

Before:  GIBBONS, MURPHY, and HERMANDORFER, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  Julia C. Nemecek, THE NEMECEK LAW FIRM, LTD., Columbus, Ohio, for Petitioner.  Timothy Bo Stanton, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

## OPINION

─────────────

MURPHY, Circuit Judge.  After an immigration judge denied Sona Baro's application for relief from removal, she had 30 days to appeal to the Board of Immigration Appeals.  She sought to find a new attorney in the interim.  Soon after the judge's decision, though, her sickle-cell disease hospitalized her for several days and left her in pain for months.  When she felt well enough to consider her case, it took her weeks to get an appointment with a new attorney.  That attorney then took six more weeks to appeal.  Baro asked the Board to equitably toll its 30-day

deadline.  But the Board held that Baro failed to meet the extraordinary-circumstance and due-diligence elements required for equitable tolling.  We agree with this decision and deny Baro's petition for review.  In the process, we hold that this 30-day deadline is not "jurisdictional" and that courts should review the Board's ultimate equitable-tolling conclusions using a deferential standard.

I

Baro was born in Guinea in 1981.  She grew up there.  When she was just seven months old, Baro's grandmother took her and Baro's sister to undergo female genital mutilation against her mother's wishes.  This procedure has had long-lasting harmful effects on Baro's health and well-being.  When Baro was older, her family also required her to enter an arranged marriage to an abusive man.  He "beat her regularly" and tortured her in other ways, such as by burning her with cigarette butts.  Admin. R. (A.R.) 140.  One severe incident of abuse left her hospitalized for several days in February 2015.

The next month, Baro fled to the United States.  She entered the country on a non-immigrant visitor visa that authorized her to remain until September 2015.  But her ex-husband told her relatives in Guinea that he would "sequester her and that she [would] no longer see the daylight" if she ever returned.  *Id.*  So she overstayed her visa by years.

In 2022, an immigration officer issued Baro a notice to appear in removal proceedings that charged her with being deportable.  *See* 8 U.S.C. § 1227(a)(1)(B).  Baro conceded that she was deportable.  But she applied for asylum, withholding of removal, and relief under the Convention Against Torture.

On June 14, 2024, an immigration judge denied her application.  The judge found her request for asylum untimely because she did not file it within a year of entering the United States.  The judge next held that Baro did not qualify for withholding of removal.  Although she feared her ex-husband, the judge concluded that his abuse was not tied to any trait that the immigration laws protect (such as membership in a particular social group).  And the judge denied her relief under the Convention Against Torture because she did not show that a public official would harm her or acquiesce to her torture.

Agency regulations gave Baro 30 days to appeal the immigration judge's decision to the Board of Immigration Appeals.  *See* 8 C.F.R. § 1003.38(b) (2025).  But it took her over five months to appeal.  Baro's lawyer informed her of the decision a few days after the judge issued it.  At that time, Baro preferred to find replacement counsel to handle the appeal given the costs and travel associated with keeping the same counsel.  Before she could retain a new lawyer, though, she "became gravely ill with a sickle-cell disease crisis." A.R. 27.  She has long suffered from sickle-cell disease, which has caused her to have "periods of extreme pain" at least once a year. A.R. 28.  Yet the crisis in June 2024 was the "worst" she had "ever experienced[.]" *Id.*  It required her to stay in the hospital for several days on two occasions in the second half of June.  And Baro asserted that the sickle-cell crisis continued to cause severe pain over the next few months.  This pain harmed her mental health and triggered significant weight loss.

Baro "started feeling better" in September 2024.  *Id.*  Although she knew that she had missed her appeal deadline, individuals in her community recommended that she reach out to Julie Nemecek, an immigration attorney in Columbus, Ohio.  But Nemecek had no available appointments until October 22.  Baro thus did not meet with Nemecek until that date, and she retained Nemecek for the appeal the next day.  It took Nemecek several more weeks to research the appeal.  Baro also gathered medical evidence to support her request to file late.  And Nemecek unfortunately had to have surgery that put her "on bed rest for two weeks" in the second half of November.  A.R. 32.

Ultimately, Baro appealed on December 10, 2024.  She simultaneously moved the Board of Immigration Appeals to accept the late appeal and equitably toll the time limit because of her health struggles.  The Board denied this request.  It reasoned that Baro had failed to offer objective medical evidence showing that she "continued to suffer from the effects of her 'crisis'" in the months after the hospital discharged her in late June. A.R. 3–4.  So it found that she had not established the due diligence required for equitable tolling.  It also reasoned that Baro's inability to obtain an appointment with Nemecek for several weeks in September and October was not an extraordinary circumstance that could toll the deadline.  And the Board highlighted that it still took Baro many weeks after that appointment to appeal.  It thus dismissed the appeal as untimely.

II

A. Jurisdiction

At the time of this dispute, the relevant regulation stated that a "Notice of Appeal from a Decision of an Immigration Judge . . . shall be filed directly with the Board of Immigration Appeals within 30 calendar days after" the judge issued the decision. 8 C.F.R. § 1003.38(b) (2025). This regulation implements a statutory asylum provision indicating that the governing administrative procedures should provide that "any administrative appeal shall be filed within 30 days of" the "later" of either "a decision granting or denying asylum, or . . . the completion of removal proceedings before an immigration judge[.]" 8 U.S.C. § 1158(d)(5)(A)(iv). The Executive Branch has recently tried to amend the regulation to reduce the time to appeal in some cases. *See Appellate Procedures for the Board of Immigration Appeals*, 91 Fed. Reg. 5267, 5272 (Feb. 6, 2026). After various entities challenged this change, a district court deemed it invalid on procedural grounds. *See Amica Ctr. for Immigrant Rts. v. Exec. Off. for Immigr. Review*, 822 F. Supp. 3d 119, 134–37, 168 (D.D.C. 2026). An appeal of the decision remains pending. But we need not consider any questions about the new regulation because the parties agree that the old regulation governed Baro's appeal.

Although the Board of Immigration Appeals once treated this regulation's filing deadline as a "jurisdictional" limit on its power, it has more recently described the deadline as a mandatory claim-processing rule. *See Matter of Morales-Morales*, 28 I. & N. Dec. 714, 715–17 (BIA 2023). This change has led the Board to hold that it can overlook an untimely filing in "certain situations," including when an immigrant shows that "equitable tolling" should delay the expiration of the deadline. *Id.* at 716–17. The Board has also adopted the two-part test for equitable tolling that the Supreme Court uses in the habeas context. *Id.* at 717 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Under the Court's habeas test, parties who request equitable tolling must establish both that they "diligently" sought to appeal and that an "extraordinary circumstance" stopped them from timely doing so. *Holland*, 560 U.S. at 649 (citation omitted).

In her petition for review, Baro contends that the Board misapplied this equitable-tolling test. Before considering her arguments, we start with jurisdiction. Although the parties agree

that we have jurisdiction to review Baro's challenge, they appear to disagree over the source of our jurisdiction. The government does not dispute that the Board's decision to reject Baro's equitable-tolling argument and dismiss her appeal merged into the "final order of removal" that we generally may review under 8 U.S.C. § 1252(a)(1). Yet it adds that we may review Baro's arguments only because of a statutory "safe harbor" that ensures our jurisdiction over "constitutional claims or questions of law raised" in a petition for review. *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021) (quoting 8 U.S.C. § 1252(a)(2)(D)). The Supreme Court has read this safe harbor to encompass so-called "mixed question[s] of law and fact" that require a decisionmaker to apply "a legal standard" to a set of facts. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225, 227–28 (2020) (citation omitted). And the government suggests that the question whether this case's facts satisfy the extraordinary-circumstance and due-diligence standards for equitable tolling constitutes a mixed question that falls within this safe harbor under *Guerrero-Lasprilla*.

Yet the government's logic overlooks an initial step. The safe harbor exists to claw back our jurisdiction from various jurisdiction-stripping provisions that bar us from reviewing certain types of agency decisions—such as those that fall within "the discretion of the Attorney General" under the immigration laws. 8 U.S.C. § 1252(b)(2)(B); *see Singh*, 984 F.3d at 1148. The government, though, does not identify any jurisdiction-stripping provision that would cover Baro's appeal. So we might have jurisdiction to review even factual challenges. Ultimately, we need not resolve this issue because Baro claims to raise only legal challenges. As we have done before, we may assume that our jurisdiction arises exclusively from the safe-harbor provision. *See Sarkisov v. Bondi*, 160 F.4th 696, 703 & n.2 (6th Cir. 2025).

Apart from our own jurisdiction, an appellate court also normally has a duty to ensure a *district court's* jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 764–65 (6th Cir. 2019). And if a time limit to appeal imposes a jurisdictional restriction on a court, the court must enforce the limit and cannot carve out "equitable exceptions" to its deadline. *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Does our sua sponte duty to raise jurisdictional problems with a district court's exercise of judicial power extend to an agency's exercise of executive power? If so, that duty

might require us to decide whether the Board of Immigration Appeals correctly described the 30-day time limit to bring administrative appeals as a nonjurisdictional claim-processing rule.

Yet we doubt that we have such a duty. An agency's regulatory "jurisdiction" to take executive action raises different concerns than a court's subject-matter jurisdiction to adjudicate a case and use its coercive powers against the losing party. *See City of Arlington v. FCC*, 569 U.S. 290, 297–98 (2013). When courts properly exercise jurisdiction, the other branches of government cannot review their decisions on the merits. *See id.* at 297 (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995)). So the jurisdictional limits on the judicial power in Article III of the Constitution (and the statutes implementing it) enforce the "separation of powers" by restricting the judiciary's ability to use these coercive powers against litigants. *Steel Co.*, 523 U.S. at 94–95. Since the founding decades, then, courts have recognized a duty to ensure that they have jurisdiction to exercise their powers. *See Capron v. Van Noorden*, 6 U.S. 126, 126–27 (1804).

A question about an agency's jurisdiction, by contrast, asks whether the relevant law "forecloses the agency's assertion of authority"—here, the Board's authority to adjudicate untimely appeals using equitable tolling. *City of Arlington*, 569 U.S. at 297–98, 301. This question resembles any other question on the merits about whether an agency "misconstrued" a law. *United States v. Cortez*, 930 F.3d 350, 357 (4th Cir. 2019). As a result, our court (in an unpublished case) and other courts (in published cases) have recognized that a party can forfeit questions about an agency's jurisdiction and that courts need not raise those questions on their own initiative. *See Campos-Luna v. Lynch*, 643 F. App'x 540, 542–43 (6th Cir. 2016); *see also Jalbert v. SEC*, 945 F.3d 587, 593–94 (1st Cir. 2019); *Metro-N. Commuter R.R. Co. v. U.S. Dep't of Lab.*, 886 F.3d 97, 108 (2d Cir. 2018); *1621 Route 22 W. Operating Co. v. NLRB*, 825 F.3d 128, 140 (3d Cir. 2016); *Cedar Springs Hosp., Inc. v. Occupational Health & Safety Rev. Comm'n*, 166 F.4th 1211, 1216–17 (10th Cir. 2026). And although we once implied that a party could not forfeit or waive questions about agency jurisdiction, *see Hernandez-Perez v. Whitaker*, 911 F.3d 305, 310–11 (6th Cir. 2018), we have since recognized that the parties in that case did not flag this distinction for us, *see Mendoza-Jovel v. Garland*, 860 F. App'x 389, 392 n.4 (6th Cir. 2021).

At day's end, we need not resolve whether we have a duty to ensure agency jurisdiction on our own initiative.  Even if we had such a duty, the Board of Immigration Appeals was right to conclude that the 30-day time limit in 8 C.F.R. § 1003.38(b) did not restrict its jurisdiction. We agree with the Board (and every other circuit court to consider the issue) that this time limit does not impose an unyielding jurisdictional precondition on the Board.  *See Attipoe v. Barr*, 945 F.3d 76, 80–82 (2d Cir. 2019); *Boch-Saban v. Garland*, 30 F.4th 411, 413 (5th Cir. 2022) (per curiam); *Liadov v. Mukasey*, 518 F.3d 1003, 1008 n.4 (8th Cir. 2008); *Irigoyen-Briones v. Holder*, 644 F.3d 943, 947–49 (9th Cir. 2011); *Huerta v. Gonzales*, 443 F.3d 753, 755–57 (10th Cir. 2006); *see also James v. Garland*, 16 F.4th 320, 325 (1st Cir. 2021); *Morales-Morales*, 28 I. & N. Dec. at 716.

In recent decades, the Supreme Court has given clear instructions about how to identify a "jurisdictional" limit.  As a general matter, the Court has told us to follow a clear-statement rule that presumptively treats a restriction on a litigant's ability to pursue a claim as a "[c]laim-processing rule[]" unless the governing provision leaves no doubt that it imposes a "'jurisdictional' prescription" instead.  *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (citation omitted); *see Riley v. Bondi*, 606 U.S. 259, 274 (2025); *Henderson v. Shinseki*, 562 U.S. 428, 435–36 (2011).  As a specific matter, the Court has twice held that limits on judicial review in this immigration context are claim-processing rules, not jurisdictional limits.  It has treated a statutory mandate requiring immigrants to exhaust issues before the agency as a forfeitable claim-processing rule.  *See Santos-Zacaria*, 598 U.S. at 417–19 (discussing 8 U.S.C. § 1252(d)(1)).  And it has viewed a statutory deadline requiring immigrants to seek a court's review within 30 days of a Board decision in the same light.  *See Riley*, 606 U.S. at 274–77 (discussing 8 U.S.C. § 1252(b)(1)).

It would make no sense then to reach a different result for the deadline in 8 C.F.R. § 1003.38(b).  The regulation's text demonstrates this point.  It provides that a notice of appeal to the Board of Immigration Appeals "shall be filed directly with the Board . . . within 30 calendar days" of the relevant decision.  8 C.F.R. § 1003.38(b) (2025).  This language instructs immigrants on "what they must do if they want" the Board's review; "it provides no directives to" the Board itself.  *Riley*, 606 U.S. at 274.  Precedent further confirms the point.

The regulation tracks the language of other deadline provisions that the Supreme Court has deemed non-jurisdictional. *See, e.g.*, *id.* at 273–74 (interpreting 8 U.S.C. § 1252(b)(1)); *Henderson*, 562 U.S. at 438–42 (interpreting 38 U.S.C. § 7266(a)). The current provision thus reads as a claim-processing instruction for litigants who seek further review and lacks the "clear" jurisdictional text that the Supreme Court's cases now require. *Santos-Zacaria*, 598 U.S. at 417.

Admittedly, a provision in the asylum statute tells the Attorney General to adopt procedures setting an upper limit of "30 days" for parties to file an "administrative appeal" in asylum cases. 8 U.S.C. § 1158(d)(5)(A)(iv). Like the 30-day window to file petitions for review, though, this provision also contains no jurisdictional language. *See Riley*, 606 U.S. at 274. And Congress did use clear jurisdictional language elsewhere in the asylum statute. *See* 8 U.S.C. § 1158(a)(3), (b)(2)(D). The "contrast between the text of" § 1158(d)(5)(A) and the clear jurisdictional language "in related provisions" makes it all the more inappropriate to treat the statutory reference to the 30-day deadline as jurisdictional. *Santos-Zacaria*, 598 U.S. at 419; *see Riley*, 606 U.S. at 274.

In sum, both our court and the Board of Immigration Appeals had jurisdiction to consider Baro's equitable-tolling arguments. We thus proceed to the merits.

## B. Merits

On the merits, the parties agree on two legal questions. They agree that equitable tolling can apply to the regulation's 30-day deadline for appealing to the Board of Immigration Appeals. *Compare Enbridge Energy, LP v. Nessel ex rel. Michigan*, 146 S. Ct. 1074, 1081–84 (2026), *with Oxlaj-Perez v. Blanche*, 174 F.4th 516, 522–26 (6th Cir. 2026). And they agree that *Holland*'s two-part test (requiring extraordinary circumstances and diligence) applies to this tolling question. *Compare Holland*, 560 U.S. at 649 (two-part test), *with Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (five-factor test). We thus may assume these legal points. By doing so, we need not express a view on whether the governing statutes and regulations mandate—as opposed to permit—application of equitable tolling to the deadline in 8 C.F.R. § 1003.38(b). Nor do we address whether the agency could permissibly amend its regulations to

alter the Board's 30-day appeal deadline or its effect on the Board's authority to adjudicate untimely appeals.

Despite the parties' initial agreement, they part ways over whether the Board properly held that Baro's factual circumstances met *Holland*'s extraordinary-circumstance and due-diligence elements. Before deciding who is right, we start by identifying our standard of review for this "mixed" question of law and fact. *Guerrero-Lasprilla*, 589 U.S. at 227–28. Our review standard for mixed questions (whether de novo or deferential) depends on the nature of the question. *See Wilkinson v. Garland*, 601 U.S. 209, 221–22 (2024) (quoting *U. S. Bank N. A. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395–96 (2018)). To determine the standard, we must ask whether the question "require[s] 'primarily legal or factual work.'" *Id.* (quoting *U. S. Bank*, 583 U.S. at 396). An appellate court should apply a "deferential" standard to mixed questions that require it "to immerse itself in facts" and a non-deferential one to mixed questions that require it to make legal judgments. *Id.* at 222; *see Hernandez v. Garland*, 59 F.4th 762, 770–71 (6th Cir. 2023). And the equitable-tolling questions here (did an immigrant act diligently? did something extraordinary stand in the way?) resemble the types of "fact-intensive" issues that the Supreme Court has said to review deferentially. *Holland*, 560 U.S. at 654 (citation omitted); *see Wilkinson*, 601 U.S. at 225; *Monasky v. Taglieri*, 589 U.S. 68, 84 (2020); *see also Sarkisov*, 160 F.4th at 708.

Historical practice in a related context confirms this point. The immigration laws give immigrants 90 days to move to reopen their removal proceedings. 8 U.S.C. § 1229a(c)(7)(C)(i). We have held that the Board of Immigration Appeals may equitably toll this 90-day deadline. *See Barry*, 524 F.3d at 724–25; *see also Mata v. Lynch*, 576 U.S. 143, 147 n.1 (2015). And we have repeatedly reviewed the Board's rejection of an immigrant's equitable-tolling arguments under the deferential abuse-of-discretion standard. *See, e.g.*, *Barry*, 524 F.3d at 724–25; *Perez-Rodriguez v. Bondi*, 2025 WL 946418, at *2 (6th Cir. Mar. 26, 2025); *Reyes-Rodriguez v. Garland*, 2024 WL 1574673, at *2–3 (6th Cir. Apr. 11, 2024); *Slyusar v. Barr*, 787 F. App'x 309, 315 (6th Cir. 2019); *Kamkondo v. Holder*, 553 F. App'x 536, 538 (6th Cir. 2014) (per curiam); *Pepaj v. Holder*, 321 F. App'x 468, 472–73 (6th Cir. 2009).

All this said, the parties have not briefed the "specific" deferential "standard" that should govern in this equitable-tolling context. *Singh*, 984 F.3d at 1154. Should we use the abuse-of-discretion standard that we have applied in the motion-to-reopen context? Should we opt for a substantial-evidence test? *See id.* Or should we apply something else? We doubt the differences (if any) between competing deferential standards will typically matter. Yet, apart from ruling that our review should be "deferential," *Wilkinson*, 601 U.S. at 225, we can save the precise standard for another case in which the parties debate the issue.

The deference that we owe the Board dooms Baro's challenge to its decision. Although the Board denied Baro's tolling request on both extraordinary-circumstance and due-diligence grounds, we may rely on the latter element "alone" to reject her arguments. *Reyes-Rodriguez*, 2024 WL 1574673, at *2; *see Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). We will assume that Baro's health struggles qualified as an "extraordinary circumstance" that could justify tolling for some part of the 30-day window for appealing. *Cf. Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011); *Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008) (per curiam). Still, the Board reasonably concluded that Baro failed to establish the required diligence "over the entire" five-month "period" during which she seeks to toll the 30-day deadline. *Hernandez-Garcia v. Att'y Gen. U.S.*, 2025 WL 2048706, at *2 (3d Cir. July 22, 2025) (citation omitted); *see Wershe v. City of Detroit*, 112 F.4th 357, 367–68 (6th Cir. 2024).

We reach that result for several reasons. To start, Baro knew of the immigration judge's decision a "few days" after the judge issued it because her prior "attorney informed her" of the decision and her right to appeal. A.R. 3, 27–28, 46; *see Oxlaj-Perez*, 174 F.4th at 530. The Board also reasonably concluded that Baro did not act with diligence after leaving the hospital at the end of June. Although she said in an affidavit that her sickle-cell disease caused her to suffer "severe pain" in the months after her hospitalization, she provided no objective "medical records" verifying her condition. A.R. 3, 28. So her affidavit's general claims fail to "explain" what prevented her from filing an appeal during these months. *Hernandez-Garcia*, 2025 WL 2048706, at *2; *see Harris v. United States*, 627 F. App'x 877, 880–81 (11th Cir. 2015) (per curiam).

Next, Baro admits two critical facts starting in September 2024: that she began "feeling better" and that she "knew" that she had "missed [her] appeal deadline." A.R. 28. Yet even at this point, she did not act with any sense of urgency in trying to appeal. She instead contacted one attorney and waited many weeks until the attorney had an opening on October 22. But any "difficulties" in finding legal counsel do not typically justify tolling. *Folly v. City of Philadelphia*, 2025 WL 1742781, at *2 (3d Cir. June 24, 2025); *cf. Griffin v. Merit Sys. Prot. Bd.*, 263 F. App'x 867, 870 (Fed. Cir. 2008). And "even after" Baro retained her new lawyer on October 23, her counsel "exceeded" the 30-day "time limit" to appeal "by waiting until" early December. *Scorteanu v. INS*, 339 F.3d 407, 414 (6th Cir. 2003); *cf. Alvarez-Morales v. Bondi*, 2025 WL 3241208, at *2 (7th Cir. Nov. 20, 2025). At least in asylum cases, this 30-day window "reflects Congress's judgment" about how long an immigrant should take to decide whether to appeal. *Ba v. Holder*, 358 F. App'x 609, 615 (6th Cir. 2009); *see* 8 U.S.C. § 1158(d)(5)(A)(iv). So Baro's failure to meet the deadline even after retaining counsel confirms her lack of diligence.

In response, Baro argues that "[t]he combination of documented hospitalization and timely filing once counsel was secured" shows that she acted diligently. Petitioner's Br. 15. But this argument misconstrues the facts. She did *not* timely appeal "once counsel was secured" on October 23 because she waited until December 10. *Id.* Nor do we doubt the seriousness of Baro's disease or the toll it has taken on her difficult life. But Baro admits that she was discharged from the hospital in June and "feeling better" by September. A.R. 28. Her condition thus cannot justify much of her lengthy delay—or at least the Board could have reasonably found as much.

We deny the petition for review.